38247. SMITH v. THE STATE.

WELTNER, Justice.

The defendant was convicted of armed robbery and murder of 82-year-old Daniel Turner. The jury returned a finding that the murder was outrageously and wantonly vile, horrible and inhuman in that the murder involved torture, depravity of mind and aggravated battery to the victim, and recommended that the defendant be sentenced to death. The trial court then sentenced the defendant to death for murder, and life imprisonment for the armed robbery.

1. In his first enumeration of error Smith contends that the trial court erred in admitting in evidence two black-and-white photographs of the victim. The two photographs showing the numerous stab wounds and head injuries received by the victim, one

frontal and one rear view, cannot be said to be repetitious and cumulative. The state complied with our suggestion in *Florence v. State,* 243 Ga. 738, 741 (fn. 1) (256 SE2d 467) (1979). The photographs were relevant in that they depicted the location and nature of the wounds received by the victim and corroborated the confession of the defendant. *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); *Cobb v. State,* 244 Ga. 344 (260 SE2d 60) (1979); *Franklin v. State,* 245 Ga. 141 (263 SE2d 666) (1980); *Fair v. State,* 245 Ga. 868 (268 SE2d 316) (1980); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980). We find no merit in this enumeration of error.

Smith further complains that by admitting the photographs, the jury was given the opportunity to make a decision as to the cause of death. The defendant overlooks the fact that this is the ultimate fact facing the jury in any murder trial — death at the hand of the defendant.

2. In his second and third enumerations of error, Smith contends that the trial court erred in not defining the term "mitigating" and in not specifying the mitigating circumstances offered by him.

In *Potts v. State,* 241 Ga. 67, 86 (16) (243 SE2d 510) (1978), this court held: "Under Georgia law, mitigating circumstances are not required to be singled out in the charge. *Thomas v. State,* 240 Ga. 393, 401 (242 SE2d 1) (1977)"; and in *Collier v. State,* 244 Ga. 553, 568-9 (12) (261 SE2d 364) (1979), the court held: "The trial court charged that the jury was to 'consider all the evidence submitted in both phases of the trial in arriving at your verdict, including any and all evidence of mitigating circumstances.' It is not required that specific mitigating circumstances be singled out by the court in giving its instructions to the jury. [Citations omitted.] To influence the jury by use of examples may limit their discretion to consider other matters in addition to the examples given. A charge such as the one requested may influence the jury either to weigh mitigation against aggravation or to limit their consideration to whether mitigating circumstances exist. Under our statute the jury may recommend a life sentence even though no mitigating circumstances are found." Accord, *Stevens v. State,* 247 Ga. 698 (18) (278 SE2d 398) (1981).

The charge concerning mitigation was not improper, nor was it subject to the deficiencies discussed in Spivey v. Zant, 661 F2d 464 (5th Cir. 1981). The triers of fact were not limited in what they might consider in mitigation. Eddings v. Oklahoma, —— U. S. —— (102 SC 869, 71 LE2d 1) (1982). Mitigation being a word of common meaning and understanding, it is not error to fail to define it. *Cape v. State,* 246 Ga. 520 (272 SE2d 487) (1980).

3. Smith's fifth enumeration of error asserts that the trial court erred in instructing the jury to disregard an emotional outcry by Smith's mother during the sentencing phase of the trial.

The transcript reflects the following events during examination of Smith's mother by his counsel:

"MRS. SMITH: I'm begging y'all. Please don't take him away from me. (Witness crying). Punish him, yes, but don't kill him.

"MR. KEEBLE: Miss Mary, please compose yourself. All right? Just answer [the District Attorney's] questions."

The District Attorney then cross-examined Mrs. Smith, asking but seven questions, whereupon the witness was dismissed, and another witness was called on behalf of Smith. It was at *this* point that the court stated to the jury: "Ladies and gentlemen of the jury, I believe this is a serious matter, but I will ask you to please disregard the emotional outbreak. It has no part in this trial. We're here to decide this matter — you are — from the evidence and the law, and you decide it from that."

No objection was made to this instruction and we cannot say that the trial court abused its discretion in so instructing the jury. *Messer v. State,* 247 Ga. 316, 324 (6) (276 SE2d 15) (1981), and cases cited. It is apparent that the trial judge's ruling was not an impermissible comment on the evidence. See *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981).

4. In his sixth and seventh enumerations, Smith contends that both the death penalty statute and the Georgia Unified Appeal procedures are unconstitutional, both as constituted, and as applied in this case. "This court and the Supreme Court of the United States have upheld the constitutionality of the Georgia death penalty statute in a number of cases, and the appellant has advanced no new reason for us to reconsider our position. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); *Legare v. State,* 243 Ga. 744 (257 SE2d 247) (1979)." *Stevens v. State,* supra at 707.

Smith avers that the statutes have been applied in fact in an arbitrary and capricious manner. He points to no facts which support this conclusion. The same attack has been raised before and decided adversely to Smith's position. McCorquodale v. Balkcom, 525 FSupp. 408, 525 FSupp. 431 (N. D. Ga. 1981).

This court has also upheld the constitutionality of the Unified Appeal procedure in *Sliger v. State,* 248 Ga. 316 (282 SE2d 291) (1981), cert. denied, —— U. S. —— (decided February 22, 1982). Certainly, to determine at a state in the proceeding when a remedy might be provided whether a client is satisfied with his attorney's handling of his case is not invading the attorney-client relationship, as urged upon us by Smith. Neither does that determination call into

question the "judgment of the accused's counsel." Similar procedures are used to determine competency of counsel when guilty pleas are tendered, *Fair v. State,* 245 Ga. 868, supra; and, it cannot seriously be argued that these procedures, which are designed to protect the rights of a defendant, violate the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

5. We have studied the entire record of this case, and turn now to two matters which are not addressed in the enumeration of errors.

The trial court charged on insanity as follows: "Thus, if you find the defendant did not have reasonable sufficiency to distinguish between right and wrong because of mental disease, injury or congenital deficiency, *and* [emphasis supplied] that he acted as he did because of delusional compulsion, as I have instructed you, at the time the commission of such alleged offense, that would be an end of your consideration of this case and you would stop at that point and enter a verdict that would reflect your findings. And the form of that verdict would be, 'We, the jury, find the defendant not guilty by reason of insanity.' "

It is possible that the use of the conjunction "and" might be understood by the jury to imply that a verdict of not guilty by reason of insanity would require both an inability to distinguish right and wrong and delusional compulsion.

We have reviewed the record in this case relative to any evidence of insanity which could support a finding of not guilty by reason of insanity. The most the evidence shows is that Smith had a low IQ, possibly equivalent to that of an eleven-year-old child. There is a vast difference between low intelligence and an inability to distinguish between right and wrong. Indeed, the psychiatric testimony in the case indicates that 10% of the adult population has an intelligence level not greater than Smith's.

In final argument, Smith's counsel addressed the question of insanity as follows: "And [the judge] will charge you, I would expect, that you are to consider in your deliberations, taking your experience into that jury room, that you are to consider the absolute senselessness of the act. I will say to you the absolutely bizarre, totally senseless taking of Mr. Dan's life. You can consider that, ladies and gentlemen, in your deliberation. And, in that event, you would be authorized, if you so found, that because of the very nature of the act and the other evidence that has been presented to you, and I submit to you his IQ level, that he was insane at the time he did it. He just went berserk. No planning was involved in this thing. Certainly there's no logic to it, any way you can look at it. So I submit to you, ladies and gentlemen, that we're talking about a ten or eleven year-old child. . . ."

There being no evidence, and no suggestion by counsel, of an inability to distinguish between right and wrong or of acts which were the consequence of an insane delusion, any want of precision in the charge relative to these two principles is at most harmless error. *Lively v. State,* 178 Ga. 693 (12) (173 SE 836) (1934); *Reece v. State,* 212 Ga. 609 (94 SE2d 723) (1956); *Woods v. State,* 214 Ga. 546 (105 SE2d 896) (1958).

We note, also, that the court submitted to the jury a prepared verdict in the form as follows:

### "VERDICT

COUNT I: 'We, the jury, find the defendant (guilty-not guilty) of murder.'

COUNT II: 'We, the jury, find the defendant (guilty-not guilty) of armed robbery.' "

After the charge, defense counsel remarked that the form did not contain a place for a finding of not guilty by reason of insanity. There was, however, no objection. The court inquired of the defense counsel "Do you think that's all right?" He responded, "Yes, sir."

The failure of the court to submit a form including all of the possible forms of the verdict was not harmful, in view of our holding as to the issue of insanity in this case.

If prepared forms for verdicts are to be submitted to juries, it is obviously preferable that the submission contain a form for each verdict which might be permissible in the case. Because court-submitted documents are still rare in our practice, particular attention should be given, lest the jury draw an inference, however unfounded, of pre-disposition on the part of the trial judge. Here, as an example, the form contains in parentheses the words "guilty-not guilty." While there is no such evidence in this case, some other jury might perceive the antecedence of the word "guilty" over the words "not guilty" to be expressive of the view of the court. It would be safer were the words guilty and "not guilty" omitted entirely from the form, to be completed by the hand of the jury.

### Sentence Review

As required by Ga. L. 1973, p. 159, et seq., (Code Ann. § 27-2537 (c) (1-3)), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury, and the evidence concerning the crime and the defendant.

As provided for by the Unified Appeal procedure, we have reviewed independently the record and transcript and find no significant potential of error other than those enumerated by the

appellant.

6. Appellant argues that the sentence of death was imposed under the influence of passion, prejudice and other arbitrary factors, because the jury was inflamed by the death of an 82-year-old white man by a 21-year-old black man, together with gory photographs. We do not agree. Two photographs were not cumulative nor unnecessarily gruesome considering the scenes which they depicted. They are plainly admissible. Division 1, supra. The record is bare of any indication that the jury abdicated its oath for passion or prejudice. The appellant further asserts the "Private Slovik syndrome" for the first time on appeal. This argument is without merit. *House v. Stynchcombe,* 239 Ga. 222 (236 SE2d 353) (1977); *Cape v. State,* 246 Ga. 520 (272 SE2d 487) (1980). We find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor.

7. The jury found the following statutory aggravating circumstances justifying the death sentence: "The repeated stabbings along with two blows in the head justifies aggravating circumstances. Also the fact he was first stabbed in the back. Also the fact that he received the blows to his head after he was lying on the floor suffering from the stab wounds. For the said offense of murder was outrageously and wantonly vile, horrible and inhumane, in that the murder involved torture, depravity of mind and aggravated battery to the victim."

The State presented evidence that on June 8, 1981, Smith walked to Turner's grocery store in Lexington, Georgia. Smith had known Turner, whom he referred to as "Mr. Dan," as long as he could remember, and Turner had always been good to him. When he arrived at the store, Turner was asleep but awoke to wait on him. He asked for a pack of cigarettes and observed that Turner was alone. When Turner reached around for the cigarettes, Smith grabbed him, and Turner resisted. Smith pulled a knife out of his back pocket and repeatedly stabbed Turner until Turner dropped a hammer he had picked up. Smith grabbed the hammer and hit Turner with it twice in the head. At that time Smith saw that Willie Robinson had come to the door. The appellant went to the door and told Willie Robinson, "Damn, I have killed Mr. Dan." He instructed Willie Robinson not to tell anyone. Smith thereafter went back in the store from the front door and took money from the cash register and Turner's wallet. He was observed running from the store. While he was running, he wrapped his shirt around his bleeding hand and the hammer. As he ran, he threw the hammer and the shirt on the side of the road. Eventually he threw Turner's wallet away.

Smith was captured by authorities on the night of the murder

and the wallet, hammer, shirt, and $237.00 were recovered. Smith confessed to the crime and stated: "The reason for my actions, I was trying to get money for another car."

Shortly after the crime, a local veterinarian discovered Turner in his store under a large empty aluminum trash barrel, and several large cardboard boxes and other pieces of trash. Across the top of his head was a deep gash. He was lying unconscious in a pool of blood. His glasses had been knocked crooked; his false teeth plate was across his mouth. A broken knife blade was found in the fold of his shirt. Turner had been stabbed once below the corner of the right eye, four times in the upper right side of the chest, and twelve times in the back. He also had been struck in the head with a blunt instrument and a medical expert testified that these wounds could have resulted from the blows of a hammer. The 82-year-old victim died the next day from blunt force trauma to his head.

The sentence of death in this case rests upon the aggravating circumstances set forth in Code Ann. § 27-2534.1 (b) (7): "The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." We review the sentence in light of the United States Supreme Court's decision in Godfrey v. Georgia, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980), as construed by this court in *Hance v. State,* 245 Ga. 856, 861 (268 SE2d 339) (1980), as follows: "Torture occurs when the victim is subjected to serious physical abuse before death." The victim in this case was not killed instantaneously, but was stabbed a total of 17 times and then beaten about the head with a hammer. The victim lived almost a full day after the crime.

A defendant who tortures his victim may be found to have a depraved mind; and the age and physical characteristics of the victim may be considered in determining depravity of mind. *Hance v. State,* supra at 862.

This was not a "domestic" murder. The victim gave Smith no reason to assault him, and was in no manner threatening. Rather, Smith had known the victim for as long as he could remember, and the victim had been "good to him." Smith fled and attempted to hide his crime. See Godfrey v. Georgia, supra. The sole motive for the murder was the armed robbery of the victim to obtain money to purchase another car.

The evidence substantiates and supports the findings of the statutory aggravating circumstances, and the sentence of death. Under the facts of this case, we find that the murder was the type universally condemned by civilized society as wantonly vile, horrible, and inhumane as it involved torture to the victim as set forth above.

8. We have reviewed the instruction of the trial court during the sentencing phase of the trial and find that the charge was not subject to the defects dealt with in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977). In reviewing the death penalty, we have considered the cases appealed to this court since January 1, 1970 in which a death or life sentence was imposed and have listed in the appendix twenty-three similar cases imposing the death penalty.

This was a cold-blooded killing of an elderly man, committed in the course of an armed robbery, with the sole motive being financial gain. The cases in the appendix involve the unprovoked killing of an unarmed victim or victims during an armed robbery, and, therefore, illustrate a jury's willingness to impose a death sentence under these circumstances. Smith's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 6, 1982.

*Floyd W. Keeble, Jr.,* for appellant.

*J. Cleve Miller, District Attorney, Lindsay A. Tise, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries,* for appellee.

APPENDIX.

*Cunningham v. State,* 248 Ga. 558 (284 SE2d 390) (1981); *Cervi v. State,* 248 Ga. 325 (282 SE2d 629) (1981); *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Solomon v. State,* 247 Ga. 27 (277 SE2d 1) (1980); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Cobb v. State,* 244 Ga. 344 (260 SE2d 60) (1979); *Baker v. State,* 243 Ga. 710 (257 SE2d 192) (1979); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973); *Lingo v. State,* 226 Ga. 496

(175 SE2d 657) (1970).