### 41276, 41504. SMITH v. FRANCIS (two cases).
(325 SE2d 362)

Hill, Chief Justice.

William Alvin Smith was convicted of the murder and armed robbery of Daniel Turner and sentenced to death. *Smith v. State*, 249 Ga. 228 (290 SE2d 43) (1982), cert. denied, 103 SC 182 (1982). This is his appeal from the denial of habeas corpus.

In his original petition for habeas corpus, Smith raised 14 grounds. Following a hearing, the habeas court issued a lengthy order finding the applicable facts and deciding each point raised. Smith then filed an application for a certificate of probable cause to appeal, raising 14 enumerations of error. This court granted the application to appeal, which brings the entire case before this court.[1]

1. In granting this application, the court was particularly interested in Smith's numerous allegations that he had been denied effective assistance of counsel. Having reviewed the transcript of the original trial as well as that of the hearing in this habeas case, we have

---

[1] After Smith's first application to appeal was granted, the habeas court entered an order overruling Smith's motion to amend his original petition to add an additional ground. Smith's application for a certificate of probable cause as to that order was granted and that appeal was consolidated with his earlier appeal. The issue Smith belatedly sought to raise — that it was error for the trial court not to instruct the jury during the sentencing phase that it could specify that any life sentences imposed be served consecutively — has been decided adversely to him. *Ingram v. State*, 253 Ga. 622 (16) (323 SE2d 801) (1984); *Spivey v. State*, 253 Ga. 187 (5) (319 SE2d 420) (1984).

concluded that those allegations are unfounded.

In Strickland v. Washington, ___ U. S. ___ (104 SC 2052, 80 LE2d 674) (1984), the Supreme Court set forth the standards for judging a defendant's contention that the Sixth Amendment requires a conviction or death sentence to be set aside because of actual ineffective assistance of counsel at trial or sentencing.[2] The standards adopted apply to trials of criminal cases and to death penalty sentencing proceedings, but not to sentencing in other criminal cases. The Court set forth a two-step test, saying (104 SC at 2064): "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." The Court emphasized that the burden is on the defendant to make both showings, and that a reviewing court could find lack of sufficient prejudice without deciding whether counsel's performance was deficient (104 SC at 2069-70).

Concerning counsel's performance, the Court noted that all federal courts of appeal and most state courts have adopted the "reasonably effective assistance" standard, as Georgia has,[3] and approved it (104 SC at 2064). The Court went on to note that the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances, and stated that every effort must be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time (104 SC at 2065). The Court also pointed out that a reviewing court should recognize that counsel is entitled to a "strong presumption" (which the defendant must overcome) that counsel's conduct falls within the wide range of reasonable professional conduct and that all significant decisions were made in the exercise of reasonable professional judgment (104 SC at 2066).

Concerning the prejudice component, the Court held that the defendant must show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different (104 SC at 2068). Regarding death penalties, the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant

---

[2] "Actual" ineffective assistance of counsel excludes cases involving actual or constructive denial of the assistance of counsel altogether, and state interference with the ability of counsel to render effective assistance. The Court also excluded cases involving assistance of counsel rendered ineffective by a conflict of interest. 104 SC at 2062.

[3] *Pitts v. Glass*, 231 Ga. 638 (203 SE2d 515) (1974).

death (104 SC at 2069).

Applying the foregoing standards we find that Smith has failed to show that he was not provided reasonably effective assistance of counsel considering all the circumstances.[4] We find further that Smith has failed to show that there is a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, supra.

In reaching these conclusions we have undertaken to evaluate counsel's conduct from his perspective at the time of trial. For example, the defendant elected to plead not guilty to the charges of murder and armed robbery, and it was counsel's duty to provide assistance to him in the guilt-innocence as well as the sentencing phase of the trial. Defendant is now critical of his counsel for, inter alia, having asserted an unfounded defense of insanity, but faced with a not guilty plea, a confession and a witness who arrived during commission of the crimes who knew (and hence could positively identify) the defendant, *Smith v. State*, supra, 249 Ga. at 233-234, counsel's choice of the insanity defense (as opposed to alibi, self-defense, coercion, etc.) was reasonable under the circumstances.

The habeas court did not err in denying relief upon this ground.

2. At oral argument in this court, Smith's attorneys focused their attention on his contention that in instructing the jury during the sentencing phase the trial court erred by failing to explain what mitigating circumstances are, and their function in the jury's deliberations.

At defendant's trial, the court commenced the sentencing phase by informing the jury as follows:

"Now, ladies and gentlemen of the jury, the defendant in this case, William Alvin Smith, has been found guilty of the offense of murder and it now becomes your duty to determine, within the limits prescribed by law, what penalty shall be imposed for this offense. The Court will impose the penalty for the armed robbery and you will impose the penalty for the offense of murder.

"The law provides that when a person is found guilty in such a case, in which the State is demanding the death penalty and in which the death penalty may be imposed, it is the duty of the presiding Judge to hold a second phase of the trial and to offer the State an opportunity to present evidence in aggravation of the punishment and the accused an opportunity to present evidence in extenuation

---

[4] Because the habeas court has written a lengthy order treating alleged instances of ineffectiveness in detail, we find it unnecessary to repeat all the facts and contentions here. We do note, however, that contrary to a statement in the order, no witnesses as to Smith's "mental level" were presented during the sentencing phase.

and in mitigation of punishment. We are now in that phase of the trial. . . ."

After the introduction of evidence during the sentencing phase and after argument of counsel, the court instructed the jury in pertinent part as follows:

"Now, ladies and gentlemen of the jury, you should consider all of the evidence, both the evidence submitted during the sentence phase, as well as the evidence submitted at the prior phase of this trial, in arriving at your verdict as to the sentence to be imposed. This includes any evidence of mitigating circumstances received by you in this case.

"Ladies and gentlemen of the jury, even if you find beyond a reasonable doubt that the state has proved the existence of aggravating circumstances in this case which would justify under the law the imposition of a death sentence, you are not required to recommend that the accused be put to death. You would be authorized under these circumstances to recommend the death penalty, but you are not required to do so. The sentence to be imposed in this case is a matter entirely within your discretion and you may provide for a life sentence for this accused for any reason that is satisfactory to you or without any reason if you care to do so. The law vests the exclusive right with the jury to either make or withhold a recommendation for the death penalty."[5]

Smith contends that this charge does not meet the requirements set out in Spivey v. Zant, 661 F2d 464, 471 (5th Cir. Unit B 1981), cert. denied, 102 SC 3495 (1982), and its progeny.[6] In Spivey the court found that in death penalty cases the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, but which also guide and focus the jury's objective consideration of the particularized circumstances of the individual offense and the offender. The court went on to say (661 F2d at 471): "In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations."

In Spivey, the court's sentencing instructions did not use the word "mitigation" and, hence, did not inform the jury that it should consider evidence of mitigating circumstances. Moreover, the court

---

[5] Other instructions by the court made it clear to the jury that it could not impose the death penalty unless it found the existence of a statutory aggravating circumstance beyond a reasonable doubt.

[6] Westbrook v. Zant, 704 F2d 1487 (11th Cir. 1983); Finney v. Zant, 709 F2d 643 (11th Cir. 1983); Morgan v. Zant, 743 F2d 775 (11th Cir. 1984).

did not inform the jury that even if it found the existence of aggravating circumstances, the jury could decide not to impose the death penalty. Thus, the instructions in the case before us are not the same as in Spivey.

More importantly, as the United States Supreme Court noted in Zant v. Stephens, ___ U. S. ___ (103 SC ___, 77 LE2d 235, 247-248) (1983): "In Georgia, unlike some other States, the jury is not instructed to . . . balance aggravating against mitigating circumstances pursuant to any special standard." The Court went on to observe: "Georgia's scheme includes two important features which the plurality [in Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976)] described in its general discussion of sentencing procedures that would guide and channel the exercise of discretion. Georgia has a bifurcated procedure, see id., at 190-191, 49 LE2d 859, 96 SC 2909, and its statute also mandates meaningful appellate review of every death sentence, see id., at 195, 49 LE2d 859, 96 SC 2909. The statute does not, however, follow the Model Penal Code's recommendation that the jury's discretion in weighing aggravating and mitigating circumstances against each other should be governed by specific standards."

Rejecting Stephens' argument because it would necessitate overruling Gregg v. Georgia, the Court said (77 LE2d at 249): "For the Court approved Georgia's capital sentencing statute even though it clearly did not channel the jury's discretion by enunciating specific standards to guide the jury's consideration of aggravating and mitigating circumstances." The Court concluded, saying (77 LE2d at 258) that ". . . the Constitution does not require a State to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances, and Georgia has not adopted such a system."

Although the Stephens opinion involved a different issue and hence is not authority for our holding here, we find it persuasive that the U. S. Supreme Court does not require that a jury in Georgia be instructed as to specific standards for weighing aggravating and mitigating circumstances (i.e., the jury need not be instructed as to the function of mitigating circumstances), so long as the jury is allowed and instructed to consider any evidence in mitigation and is instructed, as here, that it has the discretion, notwithstanding proof of aggravating circumstances, to sentence the defendant to life in prison for any reason satisfactory to the jury or without any reason.[7]

As the U. S. Supreme Court noted in Zant v. Stephens, supra, Georgia, unlike some other states, does not require juries to balance

---

[7] Compare Morgan v. Zant, supra (fn. 6), 743 F2d at 779.

aggravating against mitigating circumstances pursuant to any standard. In Georgia, juries may withhold the death penalty for any reason, or without any reason, and the jury was so instructed here.[8] Hence, the need for instruction as to the nature and function of mitigating circumstances is greatly diminished in Georgia. For these reasons, we do not find the charge in issue here to have been erroneous. *Smith v. State*, supra; *Cape v. State*, 246 Ga. 520 (9) (272 SE2d 487) (1980).

3. The order entered by the habeas court discusses each of the remaining issues raised by Smith. We affirm the conclusion of that court that none of them merit relief.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 29, 1985 —
REHEARING DENIED FEBRUARY 19, 1985.

*Stephen B. Bright, Stephen B. Glickman,* for appellant.

*Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General, Paula K. Smith, Staff Assistant Attorney General, Dennis R. Dunn,* for appellee.

---

[8] As Justice Stewart, writing the plurality opinion in Gregg v. Georgia, 428 U. S. 153, 199 (96 SC 2909, 49 LE2d 859) (1976), said: "Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." See also *Conner v. State,* 251 Ga. 113, 119 (303 SE2d 266) (1983).