## S01P0641. FULTS v. THE STATE.

(548 SE2d 315)

THOMPSON, Justice.

Kenneth Earl Fults pled guilty to charges of malice murder, kidnapping with bodily injury, burglary, and possession of a firearm during the commission of a crime.[1] The jury fixed the sentence for the malice murder at death, finding beyond a reasonable doubt that the murder was committed during the commission of the capital felony of kidnapping with bodily injury, was committed during a burglary, and was outrageously and wantonly vile, horrible, or inhuman in that it involved depravity of mind. OCGA § 17-10-30 (b) (2) and (7). The jury fixed the sentence for the kidnapping with bodily injury at life imprisonment without parole, finding beyond a reasonable doubt that the kidnapping with bodily injury was committed during the

---

[1] Fults committed his crimes on January 30, 1996, and he was indicted by a Spalding County grand jury on February 7, 1996, for malice murder, felony murder, burglary, kidnapping with bodily injury, possession of a firearm during the commission of a crime, and two counts of possession of a firearm by a convicted felon. The State filed written notice of its intent to seek the death penalty on March 1, 1996. An order of nolle prosequi on the two charges of possession of a firearm by a convicted felon was filed on May 12, 1997. Jury selection began on May 12, 1997; Fults pled guilty to all remaining charges on May 19, 1997. The trial court merged the felony murder charge with the malice murder charge by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); OCGA § 16-1-7 (a) (1). The jury fixed Fults' sentence for the murder at death and his sentence for the kidnapping with bodily injury at life imprisonment without parole. The trial court entered judgment on the jury's sentences and further sentenced Fults to consecutive terms of imprisonment of 20 years for the burglary and five years for the possession of a firearm during the commission of a crime. Fults filed a motion for new trial on June 19, 1997, which he amended on March 16, 2000, and which was denied on March 17, 2000. Fults filed a notice of appeal on April 14, 2000. The appeal was docketed in this Court on May 16, 2000, but the case was stricken from this Court's docket and remanded for further proceedings on June 30, 2000. Fults filed an amended motion for new trial on November 30, 2000, which was denied on December 1, 2000. A new notice of appeal was filed on December 29, 2000. The instant appeal was docketed on January 22, 2001, and orally argued on April 16, 2001.

commission of the capital felony of murder, was committed during a burglary, and was outrageously and wantonly vile, horrible, or inhuman in that it involved depravity of mind. Id. For the reasons set forth below, we affirm the convictions and sentences.

1. The evidence adduced at Fults' sentencing trial showed that he carried out a week-long crime spree which was centered, at least in part, upon his desire to murder a man who was engaged in a relationship'with his former girlfriend. Fults first committed two burglaries, obtaining several handguns. After a failed attempt at murdering his former girlfriend's new boyfriend with one of the stolen handguns, Fults then burglarized the home of his next-door neighbors. After the male neighbor left for work, Fults forced his way through the front door wearing gloves and a hat pulled down over his face. Fults confronted the female occupant of the home, Cathy Bounds, brandishing a .22 caliber handgun he had stolen during one of the burglaries. Ms. Bounds begged for her life and offered Fults the rings on her fingers. Fults turned Ms. Bounds around toward the bedroom, either taped or forced her to tape her eyes closed by wrapping over six feet of electrical tape around her head, forced her into the bedroom, placed her face-down on her bed, placed a pillow over her head, and shot her five times in the back of the head.

A search of Fults' trailer home revealed a boastful letter he had written in gang code in which he described the murder with some alterations of detail. Upon being confronted with this letter by a law enforcement officer, Fults confessed to killing Ms. Bounds but maintained that he had shot her by accident while in a dream-like state. The murder weapon was recovered from under Fults' trailer home, and .22 caliber shell casings shown to have been fired by the murder weapon as well as items from the earlier burglaries were found behind Fults' trailer home.

Viewed in the light most favorable to the State, we find that the evidence adduced at trial was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that statutory aggravating circumstances existed as to both the murder and kidnapping with bodily injury charges. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-30 (b) (2) and (7).

## Pretrial

2. Fults contends that his trial counsel, who is now deceased, rendered ineffective assistance by failing to investigate more fully Fults' claim that other persons were involved and were more culpable in the murder than he was. We conclude that Fults has failed to show either deficient performance by his trial counsel or actual prejudice stemming from counsel's alleged ineffectiveness, both of which

are required elements of an ineffective assistance claim. See *Strickland v. Washington,* 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis,* 253 Ga. 782, 783 (1) (325 SE2d 362) (1985).

Fults testified in the evidentiary hearing held on remand that he informed his trial counsel approximately two weeks before jury selection began that several other persons were involved in the burglary of the victim's trailer home and that another person, identified by Fults in the evidentiary hearing as "D." and as "Derrick Smith," did the actual shooting at the behest of someone identified as "K. G." Fults further testified, however, that he would not have allowed trial counsel to present this theory about the crime at trial and that he had informed his trial counsel that he would not testify about the alleged co-perpetrators because he feared for the safety of his daughter.

The private investigator employed by defense counsel for pretrial preparation testified at the evidentiary hearing that Fults indeed had made a claim to the investigator and trial counsel about "D." and "K. G." and that the investigator never attempted to locate these two men. However, the investigator's testimony also confirmed Fults' testimony that Fults would not have allowed the theory to be presented at trial. The investigator also testified that Fults had admitted his guilt to him on two separate occasions. Finally, the evidence gathered by the State, including Fults' confession and an encoded letter he had written to a friend, pointed toward Fults as the sole perpetrator of the burglary, kidnapping, and murder.

Although Fults has shown that he at some point made claims that, if true, would have shown he was less culpable, we find that he has failed to show that his trial counsel's conduct fell below professionally reasonable standards in failing to investigate Fults' claims against his wishes and when the evidence belied those claims. Id. Furthermore, in light of the strong evidence of Fults' guilt and in light of the unsupported nature of Fults' claims that other persons were involved, we find that Fults has failed to show that his trial counsel's actions, even if assumed professionally unreasonable, resulted in prejudice sufficient to support his ineffective assistance claim. Id.

### Jury Selection

3. Fults contends that the trial court erred in finding prospective juror Huckaby qualified to serve as a juror. Ms. Huckaby indicated during questioning by defense counsel that she had been exposed to newspaper reports about the murder and the arrest of Fults. She admitted that she had formed an initial opinion of Fults' guilt, but

she also indicated that she understood the presumption of innocence under law, that she would find the defendant not guilty if the State failed to prove its case, that she would base her decision solely on the evidence presented in court, and that her initial opinion was not fixed. In response to additional questioning by the trial court, she indicated that she would "certainly try" to set aside any prior opinions and to base her decision solely on the evidence presented at trial.

A prospective juror who holds some opinion about the guilt of a criminal defendant need be excused only when it is shown that the opinion is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the charge of the trial court. Whether a prospective juror is able to set an opinion aside falls within the sound discretion of the trial court. *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998); *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996); *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993). A trial court is not required to excuse a prospective juror automatically simply because the juror states that she or he will "try" to set aside an opinion. *Corza v. State*, 273 Ga. 164, 166-167 (3) (539 SE2d 149) (2000); *Brady v. State*, 270 Ga. 574, 575 (2) (513 SE2d 199) (1999); *Holmes*, 269 Ga. at 126 (2); *Garland*, 263 Ga. at 496 (1). The trial court did not abuse its discretion in finding Ms. Huckaby qualified to serve.

4. A trial court's control of the scope of voir dire is reviewed under an abuse of discretion standard, and a trial court does not err by "limiting repetitive, misleading, and irrelevant questions." *Gissendaner v. State*, 272 Ga. 704, 709 (4) (532 SE2d 677) (2000); see *Barnes v. State*, 269 Ga. 345, 351-352 (10) (496 SE2d 674) (1998). We find that the trial court did not abuse its discretion in refusing to allow defense counsel to ask a juror who had previously stated that she would be unable to vote for a death sentence whether she understood that she would cast her vote as a member of a jury. Although any verdict must be unanimous, each juror's vote must be his or her own, and, if a death sentence is selected by a jury, each juror is called upon publicly and individually to confirm his or her vote in open court. See Unified Appeal Outline of Proceedings, III (B) (3) (b). Accordingly, the trial court correctly focused voir dire on the individual juror's ability to cast a vote for the death penalty under any circumstances.

5. Fults contends that his now-deceased trial counsel rendered ineffective assistance by failing to question five prospective jurors during voir dire, namely prospective jurors Harpe, Harris, Bass, Hester, and Entrekin. Because we conclude that Fults has failed to show actual prejudice stemming from counsel's allegedly deficient performance, Fults' claim fails. See *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

Through trial counsel's selective use of jury strikes, each of the prospective jurors detailed in Fults' claim was either stricken or never reached, thus there could have been no actual harm resulting *directly* from any alleged failure of trial counsel to question those jurors. We also find that Fults has failed to show actual prejudice stemming *indirectly* from these jurors' presence on the panels of prospective jurors and alternates. To the contrary, each of the jurors who actually served appears to have been fully qualified. See *Head v. Carr*, 273 Ga. 613, 622 (4) (C) (2) (544 SE2d 409) (2001) (holding that actual prejudice must be shown in an ineffective assistance of trial counsel claim regarding voir dire). We note that counsel are "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U. S. at 690. Nevertheless, we need not address whether trial counsel's declining to question the five jurors after the trial court and the State had already questioned them was professionally reasonable, because we conclude that, even assuming arguendo that trial counsel rendered deficient performance, Fults has failed to show that counsel's allegedly deficient performance resulted in actual harm. See *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

### Guilty Plea and Sentencing Trial

6. Fults contends that his now-deceased trial counsel rendered ineffective assistance by persuading him to plead guilty. To prevail on this claim, Fults "must show that his lawyer's performance was deficient and that, but for [counsel's] errors, there is a reasonable probability he would have insisted on going to trial." *Ellis v. State*, 272 Ga. 763, 764 (1) (534 SE2d 414) (2000) (citing *Hill v. Lockhart*, 474 U. S. 52, 59 (106 SC 366, 88 LE2d 203) (1985)); see id.

As this Court has recently recognized, "an attorney's strategy to avoid a death sentence by entering a guilty plea [is] a trial tactic which generally will not support a claim of ineffective assistance of counsel." *Chapman v. State*, 273 Ga. 348, 351 (2) (541 SE2d 634) (2001). This is especially the case where, as here, the evidence of guilt is overwhelming.

The private investigator employed by defense counsel testified during the hearing held on remand that he and defense counsel had discussed the case and believed the best strategy was for Fults to plead guilty. The investigator further testified that Fults "trusted [defense counsel's] idea, and he went along with it 100 percent." Fults himself testified during the hearing held on remand as follows: "[B]y me pleading guilty to the charges and getting up here and testifying [defense counsel] told me that that will show . . . I have some kind of

sympathy for what I did and I know that what I did was wrong, so I did that." Fults testified that defense counsel had guaranteed him a result other than the death penalty, but testimony by the defense investigator contradicted this testimony.

Upon our review of the transcript, including the portions from the hearing held on remand and Fults' plea colloquy with the trial court, we conclude that defense counsel's strategy in having Fults plead guilty was professionally sound and that counsel fully advised Fults of the proposed strategy and its legal ramifications, never guaranteed a sentence less than death, and properly allowed Fults to make the final decision about his plea. Accordingly, Fults' ineffective assistance of counsel claim must fail. *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

7. Fults contends that, because he pled guilty, evidence of his guilt was irrelevant and improper in his sentencing trial. He further alleges that his trial counsel rendered ineffective assistance in failing to object to that evidence.

As we have noted before, "the circumstances of the offense are relevant both to guilt *and* to sentence." *Ford v. State*, 257 Ga. 461, 463 (1) (360 SE2d 258) (1987). Although Fults had pled guilty, evidence of his crimes was relevant both to dispel any lingering doubts jurors might have and to demonstrate the aggravated nature of the crimes. The boastful letter about the murder written in gang code, the evidence that Fults was attempting to direct the activities of a gang from jail, and the general evidence about the gang which placed this other evidence in context likewise were all relevant in the sentencing phase.

"Failure to make a meritless objection cannot be evidence of ineffective assistance." *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993); see *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1). Accordingly, we conclude that Fults' trial counsel did not render ineffective assistance by failing to object to the admissible evidence concerning his crimes during the sentencing trial.

### Sentence Review

8. Fults' jury fixed the sentence for the malice murder at death, finding several statutory aggravating factors to exist, including the fact that the murder was committed during the commission of the kidnapping with bodily injury. The jury fixed the sentence for the kidnapping with bodily injury at life imprisonment without parole, finding several statutory aggravating factors to exist, including the fact that the kidnapping with bodily injury was committed during the commission of the murder. This Court has held that such "mutually supporting aggravating circumstances" are impermissible where

multiple death sentences have been imposed, and we now hold that the same rule applies where a death sentence and a sentence of life imprisonment without parole have been imposed. See *Heidler v. State*, 273 Ga. 54, 65-66 (22) (537 SE2d 44) (2000); *Wilson v. State*, 250 Ga. 630, 638 (9) (300 SE2d 640) (1983). While it was not improper for the trial court to submit all of the statutory aggravating circumstances supported by the evidence to the jury for its consideration, the jury's finding which violates the rule against "mutually supporting aggravating circumstances" must be set aside. *Heidler*, 273 Ga. at 65 (22). Therefore, we set aside the jury's finding that the kidnapping with bodily injury was committed during the commission of the murder. However, we need not reverse the sentence of life imprisonment without parole for the kidnapping with bodily injury, because it remains adequately supported by the jury's findings that the kidnapping with bodily injury was committed during a burglary and was outrageously and wantonly vile, horrible, or inhuman in that it involved depravity of mind. Id. at 65-66 (22); see also *Stringer v. Black*, 503 U. S. 222, 231-232 (112 SC 1130, 117 LE2d 367) (1992).

9. The evidence showed that Fults committed several burglaries to further his plan to murder a man and that during one of these burglaries he murdered Cathy Bounds. Fults committed the murder execution-style, firing five shots to the back of the victim's head as she lay face-down on her own bed, blinded by over six feet of electrical tape and smothered under a pillow. The evidence also showed that Fults had a history of criminal conduct in several states and that he had once claimed to have shot another man.

Evidence was presented by the State showing that Fults had been uncooperative with guards while in jail, resulting in his being physically compelled to cooperate on two occasions. Evidence also showed that Fults had made death threats against a fellow inmate over a dispute involving $10. See *Gissendaner*, 272 Ga. at 718 (19) (b) (considering post-arrest conduct in proportionality review).

We conclude, considering both the crime and the defendant, that the death sentence imposed for the murder in this case was neither excessive nor disproportionate to the penalties imposed in similar cases in Georgia. OCGA § 17-10-35 (c) (3). The cases appearing in the Appendix support this conclusion in that each involved a deliberate murder during a kidnapping with bodily injury or during a burglary.

10. We find that the sentence of death in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*King v. State*, 273 Ga. 258 (539 SE2d 783) (2000); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Gissendaner v. State*, 272 Ga. 704 (532 SE2d 677) (2000); *Gulley v. State*, 271 Ga. 337 (519 SE2d 655) (1999); *Lee v. State*, 270 Ga. 798 (514 SE2d 1) (1999); *Pye v. State*, 269 Ga. 779 (505 SE2d 4) (1998); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *Waldrip v. State*, 267 Ga. 739 (482 SE2d 299) (1997); *McClain v. State*, 267 Ga. 378 (477 SE2d 814) (1996); *Ward v. State*, 262 Ga. 293 (417 SE2d 130) (1992); *Tharpe v. State*, 262 Ga. 110 (416 SE2d 78) (1992); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987).

DECIDED JUNE 11, 2001 —
RECONSIDERATION DENIED JULY 16, 2001.

*Sullivan & Sturdivant, Harold A. Sturdivant, Michele W. Ogletree,* for appellant.

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Karen A. Johnson, Assistant Attorney General,* for appellee.