**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**December 7, 2021**

# In the Court of Appeals of Georgia

A21A1709. BERNARD v. THE STATE.

PINSON, Judge.

Michael Bernard was convicted of crimes committed during a home invasion. On appeal, he contends that his trial counsel was constitutionally ineffective for failing to object when a police investigator introduced prior consistent statements of a co-defendant who had already testified. We disagree. Even assuming the investigator's testimony was improper bolstering, trial counsel's decision not to object was part of a reasonable strategy to undermine the State's reliance on the co-defendant's testimony. A reasonable strategy call is not constitutionally deficient performance, so we affirm the decision below.

## Background

Early one morning, Richard Wilson was leaving his apartment for work when two masked men forced their way through the front door.[1] They struck Wilson in the head with a gun, punched and kicked him, and demanded all his money. The attackers told Wilson they had been "watching" him and they knew he owned a gun, and they stole his wallet and at least $3,500 in cash. . One of the men took Wilson's Glock handgun from his bedroom and left. The remaining attacker kept beating Wilson, telling him that he would return and kill him if he called the police.

Later that morning, someone tried to use Wilson's stolen credit cards. An investigator identified the person presenting the stolen cards as Nicholas Thomas. When questioned, Thomas told the investigator that he had gotten the cards from Michael Bernard. And in turn, Bernard's cell phone records led to the identification and arrest of Chinelo Davis, who worked at the same company as Wilson and had exchanged a number of calls with Bernard around the time of the crime. Thomas, Bernard, and Davis were each charged with first-degree home invasion, armed

---

[1] "On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).

robbery, aggravated assault, and possession of a firearm during the commission of a felony.[2] They were tried separately.

At Michael Bernard's trial, co-defendant Thomas identified Bernard in the courtroom and admitted to arranging with Bernard to try to "make money" with the victim's stolen cards. He also admitted that he made purchases with the victim's cards. And cell phone data showed that Bernard was in the area of the attack when it happened, that Bernard and Davis had exchanged calls just before and just after the robbery, and that Davis had texted Bernard with instructions to erase all Bernard's text messages and "dump" his phone. Bernard's cell phone also contained a text message appearing to offer to sell the same model Glock handgun that had been stolen from the victim.

The State also elicited testimony from both co-defendant Chinelo Davis and lead investigator Coleman Lindsay about the investigator's interview of Davis. Davis testified that he told the investigator that he had owed money to Bernard; pointed out the victim to Bernard; told Bernard the victim was known for carrying a lot of cash; and told Bernard that no one needed to die over money. But Davis denied knowing

---

[2] Davis and Thomas were also charged with one count each of possession of a firearm by a convicted felon during the commission of a felony.

where the victim lived, leading Bernard there on the morning of the crime, or telling the investigator that he knew where the victim lived. Instead, he maintained that on the morning of the crimes, he was on his way to the post office before work when he stopped to urinate in a "random" parking lot, where he briefly saw Bernard and an unidentified man sitting in a parked car. He claimed that he learned only later that the lot was attached to the victim's apartment complex.

The investigator's testimony about the interview was consistent with Davis's testimony in most respects. The investigator confirmed that Davis admitted he owed money to Bernard, pointed out the victim to Bernard, and told Bernard the victim was an "easy target" who carried a lot of cash. The investigator also testified that Davis was upset that they hurt the victim, consistent with Davis's testimony that he told Bernard no one needed to die over money. But the investigator's testimony diverged from Davis's in one important respect: although Davis denied knowing where the victim lived, the investigator testified that Davis said in the interview that he led Bernard to the victim's apartment complex and told Bernard the victim would be coming down a specific staircase at 6:00 a.m. The investigator testified that Davis had initially told him the story about urinating in a random parking lot, but that "we

4

basically discussed [the events around the crime] until we were at an agreement" that Davis had set up the victim.

Bernard's trial counsel did not cross-examine Davis, object to the investigator's testimony about his interview with Davis, or cross-examine the investigator about the interview. Instead, in his closing argument, trial counsel pointed out that the State was relying on Davis as a reliable witness even as it drew attention to Davis's inconsistent stories that it had elicited through his testimony and the investigator's. Counsel argued:

> So what they're really saying about Mr. Davis is that he lied to you today. He lied to you today. Yet they would ask you to base your verdict on someone, according to the State's theory, that lied to your face. No respect. They don't believe Mr. Davis, but they would ask you to believe Mr. Davis to convict this man, and that's not right. .... You can't have it both ways, but that's the way the State wants to leave it. What they're really saying is believe these people when it suits us, and disbelieve them when it doesn't.

The jury found Bernard guilty of all four charges against him. He was convicted and sentenced to 20 years with 15 to serve.

At the hearing on the motion for new trial, Bernard's appellate counsel asked his trial counsel about failing to object to improper "bolstering hearsay" when the

5

investigator was testifying about his interview with Davis. Trial counsel responded that he considered objecting, but that he ultimately went with a strategy of impeaching both Davis and the other co-defendant, Nicholas Thomas, through the investigator's testimony. Trial counsel explained:

> First [of] all, Chinelo Davis had testified. I wanted the officer to talk about what Chinelo Davis had said as well as Nicholas Thomas so I could essentially impeach them through the officer. So that was all strategic. So, yes, I considered it, but I think it worked to our advantage. To the degree that it was impermissible bolstering, I don't think it was necessarily hearsay because they had already testified. Be that as it may, I also planned on using what you are clarifying [sic] as hearsay. So all that was part of my strategy in impeaching these witnesses through the—through the testimony of the officer and that's what I did.

The trial court denied the motion for new trial, finding that counsel's choice not to object to the investigator's testimony was a reasonable strategy.

## Discussion

On appeal, Bernard contends that his trial counsel rendered constitutionally ineffective assistance by failing to object when the investigator offered testimony about his interview with Chinelo Davis that was consistent with Davis's earlier testimony. To prevail on a claim of ineffective assistance of counsel under the Sixth

6

Amendment, a defendant must establish both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). The trial court rejected Bernard's ineffective-assistance claim because he failed to establish deficient performance. We agree with the trial court.[3]

In assessing a claim of deficient performance, "every effort must be made to eliminate the distorting effects of hindsight," and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995) (punctuation omitted). An attorney's strategic or tactical decision "will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it." *Hughs v. State*, ___ Ga. ___ (2) (Case No. S21A0970, decided October 5, 2021) (punctuation omitted). And an attorney is not ineffective for failing to make a meritless objection, *Fitts v.*

---

[3] "In reviewing the trial court's decision, we accept factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (cleaned up).

*State*, ___ Ga. ___ (2) (859 SE2d 79, 86) (2021), or for failing to make a valid objection if the decision not to object was a reasonable strategic call. *Benton v. State*, ___ Ga. App. ___ (3) (d) (861 SE2d 672, 683) (2021).

Bernard contends that the investigator's testimony relating prior consistent statements by Davis that connected Bernard to the victim were inadmissible hearsay, because the defense had not challenged Davis's credibility. See OCGA § 24-6-613 (c) (explaining that prior consistent statements are admissible to rehabilitate a witness if they "logically rebut[] an attack made on the witness's credibility"). But even if so, Bernard has not shown that failing to object to those statements rose to the level of constitutionally deficient performance. As his trial counsel explained in the hearing on Bernard's motion for a new trial, he had a reason for not objecting: he wanted the jury to see not only that Davis was unreliable, but also that the prosecution *knew* he was unreliable, and, further, that the prosecution wanted the jury to believe only certain parts of Davis's testimony. Indeed, trial counsel made that exact point in his closing argument, telling the jury, "They don't believe Mr. Davis, but they would ask you to believe Mr. Davis .... You can't have it both ways, but that's the way the State wants to leave it. What they're really saying is believe these people when it suits us, and disbelieve them when it doesn't." And counsel advanced this strategy by having

8

the investigator describe his interview with Davis in full, so the jury could see that some details of Davis's account matched the investigator's while others differed. The strategy was coherent and reasonable, even if we know with the benefit of hindsight that it did not carry the day. See *White*, 265 Ga. at 23 (2). In short, even if some of the investigator's testimony was inadmissible hearsay, trial counsel's strategic call to not object was neither "patently unreasonable," *Hughs*, ___ Ga. at ___ (2), nor outside the "wide range of reasonable professional assistance." *White*, 265 Ga. at 22 (2).

Because Bernard has failed to show deficient performance, we need not address whether he was prejudiced by counsel's conduct. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) ("If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.").

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur*.