## S00A0989. CORZA v. THE STATE.
(539 SE2d 149)

HINES, Justice.

A jury found Carlos Corza guilty of felony murder, hijacking a motor vehicle, armed robbery, and aggravated assault in connection with the fatal shooting of Thomas Skinner. Corza appeals his convictions, challenging the admission of certain evidence, the refusal to excuse a juror for cause, and the effectiveness of trial counsel. Finding the challenges without merit, we affirm.[1]

Around 1:30 a.m. on March 23, 1996, Corza and two friends, Nikki Bales and Amy Henry, went looking for a car to steal. Thomas Skinner drove by the three several times and then stopped. They approached Skinner and asked him to give them a ride to Little Five Points, and Skinner told them to get in. Corza sat in the front passenger seat. Skinner introduced himself to the young women, but did not say anything to Corza. When Corza entered the green Ford Bronco he had a .25 caliber automatic weapon in his jacket pocket. Skinner reached down to his side several times, and after Bales inquired about it, Skinner pulled out a pack of cigarettes and gave a cigarette to Bales. As Bales was giving Skinner directions to the group's destination, Skinner stated that he missed a turn. Corza pulled out his pistol, pointed it at Skinner's head and told him, "You sure did, now put your s—t in park." Corza himself put the Bronco in park, opened the driver's side door, and ordered Skinner to get out but Skinner "just sat there." Corza said, "M——f—r, I said get out," and hit Skinner in the forehead with the pistol. Corza then fired four gunshots; Skinner fell to the ground. Corza got in the driver's seat, and stated, "I had to." Corza had a .44 caliber handgun in his lap. Corza began to kiss his hands and touch his forehead, which Bales took to be gang signs because Corza told her he was in a gang. Corza did not seem at all upset by the shooting; in fact, he stated that it excited him sexually. Corza, accompanied by the two women, drove

---

[1] The crimes occurred on March 23, 1996. On November 5, 1996, a Fulton County grand jury indicted Corza for malice murder; felony murder while in the commission of at least one of the following felonies: aggravated assault with intent to rob, aggravated assault, armed robbery, hijacking a motor vehicle; hijacking a motor vehicle; armed robbery; aggravated assault; and aggravated assault with intent to rob. Corza was tried before a jury December 16-20, 1996, and the jury found him guilty of felony murder, hijacking a motor vehicle, armed robbery, and aggravated assault; he was acquitted of malice murder and aggravated assault with intent to rob. By sentences dated December 20, 1996, and filed March 19, 1997, Corza was given life imprisonment for felony murder, a consecutive 20 years in prison for hijacking a motor vehicle, and a concurrent 20 years in prison for armed robbery; the court found that the aggravated assault merged with the felony murder for the purpose of sentencing. A motion for new trial was filed on January 7, 1997, amended on October 8, 1999, and denied on December 20, 1999. A notice of appeal was filed on January 12, 2000, and the appeal was docketed in this Court on March 3, 2000. The case was submitted for decision on April 24, 2000.

Skinner's vehicle from the scene.

Skinner was found lying in the middle of the blood-covered road. Part of his skull was just "hanging" and brain matter was oozing from the wound. However, he was still breathing and was transported to the hospital, where he later died from multiple gunshot wounds. Two bullets had lodged in Skinner's head and a third in the base of his neck; one wound to the head was inflicted at a range of approximately 18 inches. All three bullets were .25 caliber and had been fired from the same weapon.

A passing bus driver witnessed the shooting. He saw the victim, who appeared unarmed, standing outside the Bronco on the driver's side, heard a gunshot and saw the victim fall to the ground. The bus driver then heard more gunshots, the driver's side door closed, and the Bronco "took off."

Duffy and another man, who were friends of Corza and the young women, were walking around town when they saw Corza, Bales, and Henry drive up in the victim's vehicle. The men got in, and Duffy asked Corza how he had obtained the Bronco. Corza replied that he had shot someone, and Duffy observed Corza with a .44 caliber handgun and a .25 caliber handgun lying in his lap. Duffy asked to be let out of the vehicle, and the others, save Corza, followed. Duffy again saw Corza later that day and Corza freely related the details of the shooting. Corza also told Duffy where he had abandoned the victim's vehicle, and that he had fired at the Bronco to try to blow it up.

At approximately 7:00 a.m. on March 24, 1996, a police officer responded to a call to investigate an abandoned vehicle. He discovered the victim's Bronco with its tires removed. There were also bullet holes in the Bronco and something stuck inside the gas tank which appeared to be charred. Corza's fingerprint was found on the driver's side door.

1. The evidence was sufficient to enable a rational trier of fact to find Corza guilty beyond a reasonable doubt of the felony murder of Thomas Skinner and the related crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to the start of trial, Corza unsuccessfully moved to exclude evidence of his gang membership as impermissible character evidence. He asked that there be no reference to his gang activities, gang involvement, or gang-related tattoos, and specifically that there be no testimony about the apparent gang signs he made right after the shooting.[2] Corza contends that the trial court erred in denying

---

[2] Corza also requested that he be allowed to wear makeup to cover up the visible tattoos, but he does not contest the court's denial of his motion in this regard.

his motion, and thereby allowing testimony of his membership in a street gang and the gestures he made following the shooting because there was no evidence that the shooting was gang-related or motivated; thus, the evidence was irrelevant and its only purpose was to show that Corza was a bad person.

But whether the shooting was shown to be gang-related is not determinative of admissibility here. The evidence at issue is of Corza's direct actions immediately following the fatal shooting. Compare *Hartry v. State*, 270 Ga. 596 (512 SE2d 251) (1999); *Alexander v. State*, 270 Ga. 346 (509 SE2d 56) (1998). The trial court properly allowed eyewitnesses Bales and Henry to describe Corza's seemingly ritualistic gestures after he shot the victim, which they believed to be gang signs, as part of the res gestae. The State is entitled to present evidence of the entire res gestae of a crime. This is so even if the defendant's character is incidentally placed in issue. *Johnson v. State*, 264 Ga. 456, 457 (1) (448 SE2d 177) (1994). See also *Garcia v. State*, 267 Ga. 257, 258 (4) (477 SE2d 112) (1996).

3. Corza contends that the court should have excused a juror for cause. Corza asked the juror whether allegations that Corza was a member of a street gang would interfere with her impartiality, and the juror expressed the belief that if she became convinced that he were such a member, it would interfere with her impartiality. When asked whether, if the question of self-defense in the trial had nothing to do with alleged gang membership, she would be able to put aside the issue of whether Corza was or was not a gang member, she responded that she believed it would affect her but that she would have to hear all the evidence. When pressed further and asked if she could put aside any issue of gang membership and judge the issue of self-defense impartially, she stated that she was not certain. The State then asked whether she would try to the fullest extent possible to follow the instructions of the court as to the evidence and the law, and to put the issue of gang membership out of her mind at the instruction of the court, and the juror responded that she would try.

Whether to strike a juror for cause lies within the sound discretion of the trial court. *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993). For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. Id.; *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996). A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). Nor is excusal required when a potential juror states that he or she will "try" to decide the case based

upon the court's instructions and the evidence. *Brady v. State*, 270 Ga. 574, 575 (2) (513 SE2d 199) (1999); *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998); *Garland*, supra. A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference. *Kirkland v. State*, 271 Ga. 217, 219 (2) (518 SE2d 687) (1999).

Nothing in the juror's responses compels a finding that she had formed an opinion of Corza's guilt or innocence that was so fixed and definite that she would be unable to set the opinion aside, or that she would be unable to decide the case based upon the court's charge and upon the evidence. It was not an abuse of discretion to refuse to excuse the juror. *Garland*, supra.

4. Corza contends trial counsel was ineffective in failing to investigate and present Corza's alibi defense, and in repeatedly raising allegations of Corza's membership in a street gang during juror voir dire.

In order to prevail on this claim, Corza must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct" and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. 253 Ga. at 784. The second prong requires that he show that there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different. 253 Ga. at 783.

(a) At trial, counsel did not present an alibi defense, instead arguing that the shooting was in self-defense. At the hearing on the motion for new trial, Corza's mother testified that at approximately 9:00 on the night of the murder, she left Corza at a bar and picked him up again at 3:00 or 4:00 a.m., and that several hours later, Bales, Henry, and a male arrived driving the Bronco and persuaded Corza to join them. She testified that in a conversation with counsel before trial, she related the information concerning transporting Corza to and from the bar, but counsel advised her that because of her relationship to Corza, her testimony would be of no use. She could not remember whether she informed him of Bales and Henry's later arrival. At the hearing, she could not remember the date of the murder, or even the specific month.

Corza testified to similar effect, although he conflicted with his

mother about who came to the door and who remained in the Bronco. He also testified that he told counsel about his arrival and departure from the bar, but did not testify that he informed counsel of his later departure with Bales and Henry in the Bronco. He also testified that he provided counsel with first names of those co-workers who were in the bar with him, but did not know their last names, and that when counsel discussed the expected testimony of Bales and Henry, Corza "gave [counsel] basically what they say [sic], and . . . said, well, that's what happened."

Counsel testified that when he first interviewed Corza, Corza told him that he was not involved and was at a bar across town, with friends, and that he told counsel the first names of those friends; he was not able to name the bar. When discussing and preparing the self-defense strategy with Corza, Corza never denied being present at the killing. Counsel weighed the possibilities of success of the self-defense claim and pursuing the alibi defense, and concluded that there was more possibility of success with self-defense, especially given that two witnesses who knew Corza would testify that he was present and that the information he had with which to pursue an alibi defense was very sketchy. At trial, Bales and Henry testified inconsistently with their previous statements to counsel, particularly as to an agreement among the three of them to steal a car before their encounter with Skinner.

In ruling on the motion, the court noted that any alibi was of little use as the murder occurred between the hours that Corza's mother testified she left him at the bar and later picked him up, and noted that despite much more time available than trial counsel had to find and produce any witnesses who were at the bar with Corza, none were produced for the motion for new trial. The court specifically found that there was nothing in the evidence to show that counsel's trial tactics were unreasonable, or that the outcome of the trial would have been different if counsel had pursued an alibi defense.

Considering the state of the expected evidence, the information counsel had been provided, and Corza's affirmative statement to counsel that the version related by Bales and Henry was substantially correct, the court properly ruled both that pursuing self-defense to the exclusion of alibi was a reasonable decision, and that the outcome of the trial would not have been different had the alibi defense been pursued.

(b) At the hearing on the motion for new trial, Corza presented no evidence on the question of counsel's decision to voir dire the jurors as to the potential effect of allegations that Corza was a gang member, despite the fact that trial counsel testified at the hearing. Consequently, as to this ground, Corza has failed to meet his burden of establishing that counsel's performance was not within the wide

range of professional conduct and the result of reasonable professional judgment. See *Bagwell v. State*, 270 Ga. 175 (1) & (1) (f) (508 SE2d 385) (1998). Further, at the time of juror voir dire, counsel was aware that the court had denied Corza's motion in limine to exclude any reference to alleged gang membership. Consequently, it was reasonable for counsel to prepare for the introduction of such evidence, and that preparation included excluding from the jury those who would be unduly prejudiced by the allegations.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 20, 2000.

*Jeffrey P. Maniagli*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Monroe, Assistant Attorney General*, for appellee.