S06A0843. WHITE v. THE STATE.
(635 SE2d 720)

HINES, Justice.

Following the denial of his motion for new trial, Tony White appeals his conviction for felony murder while in the commission of aggravated assault in connection with the fatal shooting of Kenneth Spearman. White challenges the admission into evidence of his inculpatory statements, a portion of the trial court's instruction to the jury, and the effectiveness of his trial counsel. For the reasons which follow, we find no reversible error and affirm the judgment of conviction.[1]

---

[23] *Brown v. State*, 262 Ga. 223, 224 (416 SE2d 508) (1992).

[24] *Shelton*, 279 Ga. at 162.

[25] OCGA § 17-8-4.

[1] The fatal shooting occurred on July 29, 2004. On October 14, 2004, a DeKalb County grand jury indicted White for malice murder, felony murder while in the commission of aggravated assault, and aggravated assault. He was tried before a jury March 14-16, 2005, and was found not guilty of malice murder, but guilty of felony murder and aggravated assault. On March 16, 2005, White was sentenced to life in prison for the felony murder; the trial court found

The evidence construed in favor of the verdicts showed that in the early morning hours of July 29, 2004, White was at an establishment with a snack counter, video games, pool, ping-pong, and other entertainment. The establishment's owner, Grant Allen, was with Theresa Hamm at the snack counter when White went to the counter to buy a drink and some chips. Hamm noticed that White had his hand on a pistol in his pocket and that he was raising and lowering the pistol as if he was about to pull it out. White walked away from the snack bar, as if to leave; however, on his way out of the building he drew his pistol and shot Kenneth Spearman. Spearman was putting money into one of the pool tables, and he did not have a weapon. There was no conversation between Spearman and White at the time of the shooting. Spearman died almost instantly from the gunshot wound to his head. The shot almost completely severed his brain stem.

Although Hamm could not see the shooter's face, she noted certain distinctive features about him. She never lost sight of him between the time he left the snack counter until after he shot Spearman. Allen did not witness the shooting, but he later identified White from a photographic lineup as the man who walked away from the snack counter just before Allen heard the gunshot. Allen knew White because he was a frequent customer. Surveillance cameras recorded the shooting.

White initially denied shooting Spearman, but changed his story when police showed him a still photograph taken from the videos. He stated that he was scared when he saw Spearman because Spearman had shot at him during a prior confrontation.

1. The evidence was sufficient to enable a rational trier of fact to find White guilty beyond a reasonable doubt of felony murder while in the commission of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. White contends that the trial court erred by admitting his statements to investigators when there was no credible evidence that *Miranda* warnings had actually been read to him, and because his limited abilities prevented a "finding of a truly knowledgeable waiver of his rights." But the contention is unavailing.

The trial court conducted a pre-trial *Jackson-Denno*[2] hearing regarding White's statements to police, and ruled that White was advised of his *Miranda* rights and that his statements were freely and voluntarily made. An investigator's testimony at the hearing was

---

the aggravated assault merged for the purpose of sentencing. A motion for new trial was filed on April 13, 2005, and it was denied on November 17, 2005. A notice of appeal was filed on December 16, 2005, and the case was docketed in this Court on January 13, 2006. The appeal was submitted for decision on the briefs.

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

that he read White each of the *Miranda* rights and initialed each one as it was read because White informed him that he would not sign the form because he could not read; he had no difficulty communicating with White; White never indicated any confusion or misunderstanding of his rights; White never invoked his rights; he agreed to talk; and White was not threatened or coerced to do so. The investigator further testified that the actual reading of the rights was not caught on tape because another officer forgot to turn on the recorder.

White asserts that the investigator's claim that he read him the *Miranda* rights was not credible; however, unless it is clearly erroneous, a trial court's determination as to credibility relating to the admissibility of a defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal. *Murphy v. State,* 279 Ga. 410, 411 (3), n. 7 (614 SE2d 53) (2005). The investigator's testimony regarding the reading of the *Miranda* rights to White was uncontradicted at the hearing.

White further points to his illiteracy at the time of the statements as belying "a truly knowledgeable waiver" of his rights; however, the fact of illiteracy itself does not demand a finding of a less-than-knowledgeable waiver in the face of evidence to the contrary, as in the present case. *Adams v. State,* 275 Ga. 867, 869 (4) (572 SE2d 545) (2002).

3. White next contends that the trial court committed harmful error when it instructed the jury that the factors that it might consider in assessing the reliability of identification included "the level of certainty shown by the witness about his or her identification."

Certainly, this Court has held that when instructing a jury on the factors that may be considered in deciding the reliability of an identification, trial courts are to refrain from telling the jury that it might consider a witness's level of certainty. *Brodes v. State,* 279 Ga. 435, 442 (614 SE2d 766) (2005). However, the error in giving such an instruction must be harmful to mandate reversal of a defendant's conviction. Id.; *Dunson v. State,* 275 Ga. App. 515, 517 (2) (621 SE2d 525) (2005). White asserts that the error was harmful because the only evidence against him other than Allen's identification was White's statements to the police, and there are "serious questions" regarding the validity of those statements.

But, as has already been discussed, White has failed to successfully challenge his inculpatory statements to police. See Division 2, supra. What is more, Allen's identification of White was supported by substantial additional evidence, including Hamm's continuous viewing of the shooter, and the fact that the incident was captured on videotape, causing White to admit to the fatal shooting. In light of this, it is highly probable that the error in giving the charge did not

contribute to the judgment, and therefore was harmless. *Dunson v. State*, supra at 517 (2), citing *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

4. Lastly, White contends that his trial counsel was ineffective because counsel did not furnish him with a copy of the discovery obtained from the State for his review in advance of trial. But, in order to prevail on his claim of ineffective assistance of counsel, White must show under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), that his attorney's performance was deficient, and that, but for such deficiency, there is a reasonable probability that the proceeding would have ended differently. *Lee v. State*, 280 Ga. 521, 522 (2) (630 SE2d 380) (2006). Moreover, in order to meet this burden, White must overcome the strong presumption that his attorney's representation fell within the wide range of reasonable professional conduct. Id. White does not carry his burden.

In denying White a new trial, the trial court expressly found that trial counsel's decision not to provide White with a copy of the discovery was based on the fact that White could not read and was going to rely on someone else at the jail to read the documents, and that counsel was concerned that showing the discovery to another inmate might produce a "snitch." The trial court further found that prior to trial, counsel spent two and a half hours with White going over the State's evidence, read the written discovery to White, viewed the videotape of the shooting with White, and together with White listened to the tape of White's custodial statements. The trial court concluded that counsel had a good reason for not giving White a copy of the discovery, and that counsel was "exceptionally effective" in his representation of White.

While this Court is to review a trial court's legal conclusions de novo, this Court will uphold a trial court's findings of fact on a claim of ineffective assistance of counsel unless those findings are clearly erroneous. *Morris v. State*, 280 Ga. 184, 185 (2) (625 SE2d 391) (2006). White has failed to show that the trial court's findings are clearly erroneous, or that his counsel's representation was deficient in the manner he maintains.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 2, 2006.

*Gerard B. Kleinrock, Carnesale, Delan & Flinn, Charles C. Flinn,* for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General,* for appellee.