## A11A0563. AMADOR v. THE STATE.

### (713 SE2d 423)

PHIPPS, Presiding Judge.

Melvin Alexander Flores Amador was convicted of aggravated assault, aggravated battery, and two counts of first degree cruelty to children for acts committed against his two-year-old daughter, A. R. He contends that the trial court erred in failing to strike a prospective juror for cause, in denying his motion to suppress his custodial statement, in excluding a witness's testimony on hearsay grounds, and in allowing an expert witness to testify to an issue within the jury's province. We find no merit in these claims of error, and affirm.

The evidence showed that on September 22, 2008, Amador lived in an apartment with Amanda Swain and their two children, A. R. and an infant. A neighbor testified that, late that evening, he was outside near Amador's apartment when he heard a child crying and screaming "stop, stop," Amador loudly talking in an angry voice, and sounds of spanking. While this was occurring, Swain was standing outside on the apartment's porch.

A friend of Swain testified that, the following morning, she picked up Swain from the apartment and the two spent some time at the friend's house and ran some errands; they returned to the apartment in the afternoon. Amador was sitting on the front porch of the apartment when they returned, and the friend saw him run inside. He came back outside and yelled for Swain. Swain and the friend ran into the apartment, where the friend observed A. R. lying unconscious on the couch. The friend testified that on other occasions she had seen A. R. with injuries, including a burn mark on her finger and bald patches on her scalp.

The friend testified that Amador said A. R. had fallen out of her crib onto a doll house. When the friend entered the apartment, the doll house was on the living room floor; Amador picked it up and ran with it into a bedroom where the crib was located. A law enforcement officer testified that he found the doll house in a bedroom next to a crib.

A paramedic testified that he arrived at the apartment to find A. R. in critical condition. The paramedic observed a head injury and bruises of different colors and different apparent ages over A. R.'s entire body. Pediatricians who treated A. R. testified to the nature and extent of her injuries, including bruising across her body (some of which appeared old) and injuries to her brain and pancreas. A pediatrician gave an expert opinion that A. R. had been "subjected to multiple blunt force trauma events." He testified that A. R.'s injuries were not consistent with a fall from her crib onto the doll house.

Amador was arrested, and he gave a custodial statement in which he reiterated that A. R. had fallen out of her crib onto the doll

house. In his statement, Amador also indicated that A. R. previously had sustained a broken arm and that he and Swain sometimes disciplined A. R. by spanking her.

1. Amador challenges the trial court's refusal to strike a prospective juror for cause. The prospective juror had indicated that, because the case involved a child, she would have difficulty being impartial and was leaning toward the state. When asked whether she could follow the court's instruction that the defendant was presumed innocent until proven guilty, she responded affirmatively. When asked whether she could follow the court's instruction on reasonable doubt, she also responded affirmatively. When asked whether she could base her decision in the case solely on the evidence and the court's instructions, however, she replied: "I believe so, but I do have very strong — it's hard for me to say without knowing the material evidence that's going to be presented and the facts and how they're going to relate, but I would hope that I would be able to do that, I just can't say that with certainty at this time."

> For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.[1]

A prospective juror's expression of reservation about his or her partiality does not require a trial court to excuse the prospective juror for cause.[2] Likewise, a prospective juror's statement that she would "try" to decide the case based upon the court's instructions and the evidence does not require the prospective juror to be excused.[3]

Whether to strike a prospective juror for cause is within the trial court's discretion, and the court's ruling thereon is proper absent manifest abuse of that discretion.[4] The trial court's conclusion regarding a prospective juror's bias is "based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference."[5] Here, the prospective juror gave conflicting answers to questions regarding her

---

[1] *Corza v. State*, 273 Ga. 164, 166 (3) (539 SE2d 149) (2000) (citations omitted); see *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997) (citing as a general rule that "a juror who merely leans one way or another, before hearing any evidence, is not subject to disqualification").

[2] See *Herrera v. State*, 288 Ga. 231, 235 (6) (702 SE2d 854) (2010); *Waldrip*, supra.

[3] *Corza*, supra at 166-167 (3).

[4] *Herrera*, supra.

[5] *Corza*, supra at 167 (3) (citation omitted).

ability to follow the court's instructions: she stated that she *could* follow the court's instructions on the presumption of innocence and reasonable doubt, but she also stated that she hoped she could apply those instructions to the evidence presented at trial, although she was uncertain that she could do so. Under these circumstances, we find no manifest abuse of discretion in the trial court's decision not to strike the prospective juror for cause.[6]

2. Amador challenges the trial court's ruling, after a *Jackson-Denno*[7] hearing, that his custodial statement had been freely and voluntarily made and thus was admissible. The state bears the burden of demonstrating the voluntariness of a custodial statement by a preponderance of the evidence.[8]

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must

---

[6] See *Head v. State*, 276 Ga. 131, 133 (2) (575 SE2d 883) (2003) (trial court did not err in declining to strike prospective jurors for cause; one prospective juror stated he had a slight leaning toward believing the defendant guilty, but noted that he needed to see the evidence before making a decision and that he could follow the court's instructions regarding the presumption of innocence; another prospective juror stated that she had formed an opinion that the defendant was probably guilty but that she would endeavor to remain impartial and stated that her opinion was not so fixed and definite that it would prevent her from deciding the case based on the evidence presented at trial); *Corza*, supra at 166-167 (3) (trial court did not err in declining to strike prospective juror for cause, where prospective juror expressed doubts about her impartiality but stated that she would have to hear all the evidence and that she would try to follow the court's instructions as to the evidence and the law); *Jordan v. State*, 247 Ga. 328, 340 (6) (276 SE2d 224) (1981) (trial court did not err in declining to strike prospective juror for cause, where prospective juror stated that he had no fixed opinion on the defendant's guilt or innocence, but opined that it would be hard for him to base his decision in the case strictly on the evidence and stated that he would do his best to keep an open mind during the trial but could not say positively whether he could do so). Cf. *Ham v. State*, 303 Ga. App. 232, 239-240 (2) (a) (692 SE2d 828) (2010) (trial court abused its discretion in declining to strike prospective juror who stated that he had already formed an opinion against the defendants, expressed disbelief about the presumption of innocence and a lack of understanding regarding reasonable doubt, and gave no indication that he intended to be impartial during the trial; parties failed to elicit necessary response that juror could lay aside prejudice and decide case on evidence and law).

[7] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[8] *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000).

construe the evidence most favorably to the upholding of the trial court's findings and judgment.[9]

The appellate court may consider all evidence of record in its review.[10] Where the case involves a mixed question of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.[11]

So construed, the evidence showed that Amador spoke Spanish and that he possessed some ability to understand and speak English. At the start of his interview, he was told in Spanish that he was under arrest and given a form that set forth in Spanish his *Miranda* rights. Amador indicated that he could read Spanish, and appeared to be able to read the form. A police officer who could hold a "rudimentary" conversation in Spanish served as a translator during the interview, and he asked Amador whether he understood each of the rights described on the form. Amador asked a question about one of the rights set forth on the form, then expressed an understanding of all of the rights, which he indicated by writing his initials next to each right and signing the bottom of the form. After doing so, Amador gave his statement.

There is no dispute that the waiver form read by Amador accurately set forth his *Miranda* rights in Spanish, that Amador indicated that he understood those rights, or that Amador initialed and signed the waiver form. Amador testified at the *Jackson-Denno* hearing that he nevertheless did not understand those rights, in part due to the linguistic inadequacy of the police officer who was serving as translator. The trial court, however, found Amador's testimony not to be credible. Given the evidence, the trial court's credibility finding was not clearly erroneous.[12] We find no error in the trial court's admission of Amador's custodial statement.[13]

3. Amador contends that the court erred in excluding certain testimony as hearsay. The witness would have testified that she observed an interaction between Amador and Swain, prior to September 23, 2008, during which Amador asked Swain to be careful while putting a shoe on A. R. and Swain responded, "[W]hat, do you think, I'm going to break her foot, too?" Assuming without deciding that the court erred in excluding the proffered testimony, we find no

---

[9] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) (citations, punctuation and emphasis omitted).

[10] *Haynes v. State*, 269 Ga. 181, 183-184 (4) (496 SE2d 721) (1998).

[11] *Thrasher v. State*, 292 Ga. App. 566, 569 (1) (666 SE2d 28) (2008); see *Vansant v. State*, 265 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[12] See *White v. State*, 281 Ga. 20, 22 (2) (635 SE2d 720) (2006).

[13] See *Nguyen v. State*, 269 Ga. App. 730, 731 (1) (605 SE2d 130) (2004).

ground for reversal; any such error was harmless because, aside from the fact that the meaning of Swain's response was unclear, other evidence was presented that on a prior occasion Swain had harmed A. R.[14]

4. Amador argues that the court erred in allowing the state's expert witness to testify to the cause of certain of A. R.'s injuries. The witness, a pediatrician, testified that A. R.'s pancreas had been cut. The prosecutor asked: "[I]n this particular child, . . . what could have caused that to the pancreas to have that cut on there, without there being a cut on the outside?" Defense counsel objected, arguing that while the witness could testify to whether the child's injuries were "consistent with something," he could not testify to the cause of the injuries. The court overruled the objection, stating that the witness could "give an opinion as to the cause." The witness opined that the injury would have been caused by significant blunt force trauma to the abdomen.

Amador cites *Dunagan v. State*[15] in support of his claim of error. We held in *Dunagan* that it would have been error to admit, over a proper objection, a physician's testimony that it was extremely unlikely that a child's physical injuries could have resulted from anything other than an intentional act of molestation.[16] The expert in this case, in contrast, testified that one of A. R.'s injuries was caused by blunt force trauma without opining on how such trauma occurred. Moreover, the opinion offered by the expert regarding the cause of A. R.'s pancreatic injury was "one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion [was] beyond the ken of the average layman."[17] The trial court did not abuse its discretion in allowing the testimony.[18]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED JUNE 23, 2011 — 

*Christopher R. Geel*, for appellant.
*Patrick H. Head, District Attorney, Allen R. Knox, John R. Edwards, Assistant District Attorneys*, for appellee.

[14] See *Ow v. State*, 255 Ga. App. 98, 101 (1) (564 SE2d 512) (2002).
[15] 255 Ga. App. 309 (565 SE2d 526) (2002).
[16] Id. at 309-310 (2).
[17] *Medlock v. State*, 263 Ga. 246, 248 (3) (430 SE2d 754) (1993) (citation omitted).
[18] See *Moore v. State*, 258 Ga. App. 293, 295 (2) (574 SE2d 372) (2002) (whether to admit expert testimony on an issue to be decided by the jury is within the trial court's discretion).