GRIFFIN, executor, *v.* BARRETT *et al.; et vice versa.*

Nos. 11997, 11998. February 17, 1938.

*S. R. Jolly, Charles J. Thurmond,* and *Wheeler & Kenyon,* for plaintiff.

*E. C. Stark, J. B. G. Logan,* and *Davis & Stephens,* for defendants.

JENKINS, Justice. 1. "Anything which destroys . . freedom of volition invalidates a will; such as fraudulent practices upon testator' fears, affections, or sympathies, duress, or any undue influence, whereby the will of another is substituted for the wishes of the testator." Code, § 113-208. "A will procured by misrepresentation or fraud of any kind, to the injury of the heirs at law, is void." § 113-209. In the amendment to the caveat it was alleged that the propounder and another beneficiary of the will falsely and untruthfully represented to the decedent that one of the caveatrices "had spoken hard words of and concerning him. Said hard words were represented by [them] to consist of a statement by [her] to [the propounder] that she would not move back to her father's home to save his . . soul from hell; all of which acts and efforts were continued up until October 28, 1933, culminating in the will offered for probate." The court did not err in overruling the demurrer to this amendment, on the general ground that it set forth no valid legal reason why the probate should be refused, and special grounds that it was but a conclusion without any material specific fact, and too vague and indefinite to give notice of what was sought to be urged. The quoted averments, taken with other averments as to undue influence and lack of testamentary capacity, pleaded a good basis for supporting evidence. See *Bohler* v. *Hicks,* 120 *Ga.* 800 (5, 6) (48 S. E. 306); *Trust Co. of Ga.* v. *Ivey,* 178 *Ga.* 629, 641 (173 S. E. 648); *Penniston* v. *Kerrigan,* 159 *Ga.* 345, 349-351 (125 S. E. 795); *Stephens* v. *Bonner,* 174 *Ga.* 128 (1-5) (162 S. E. 383); *Smith* v. *DuBose,* 78 *Ga.* 413 (2), 442 (3 S. E. 309, 6 Am. St. R. 260).

2. Where, as on the instant caveat to a will, a judgment refus-

ing a new trial has been reversed on the general ground that "under the law and the evidence . . a finding in favor of the will was demanded" (*Griffin* v. *Barrett,* 183 *Ga.* 152, 154, 187 S. E. 828), and no specific direction is given as to a retrial, the former decision is res judicata or the law of the case only as to the rulings therein made and as to the evidence previously submitted. "On the subsequent trial new facts may be shown, making a different case, and other principles of the law may control and apply to these new facts." *Anderson* v. *Clark,* 70 *Ga.* 362 (2), 365; *Woods* v. *Jones,* 56 *Ga.* 520; *Scott* v. *Powell Paving Co.,* 43 *Ga. App.* 705 (159 S. E. 895); *Hixon* v. *Callaway,* 5 *Ga. App.* 415, 417 (63 S. E. 518). In the former opinion in this case it was said that "a careful consideration of the evidence convinces us that, aside from suspicion as to lack of testamentary capacity and undue influence, there is in fact no direct or circumstantial evidence to support the verdict" rendered against the will; that "no expert testified that [the decedent] was at any time totally bereft of reason;" that "the testimony of non-expert witnesses did not show him lacking in testamentary capacity *at the time of the execution of the will*" [italics ours]; that as to the condition of his mind on the day of such execution, there was no evidence to dispute the testimony by the witnesses of the will as to his testamentary capacity at that time; "nor is there any evidence of undue influence as contemplated by the law." Upon a comparison of the evidence at the second trial, now involved, with the evidence at the former trial, dealt with in that opinion, it appears that the present record contains new and substantially different testimony on two vital questions in the case: undue influence, and the condition of the decedent's mind *on the same day that the instrument was executed.* While there was no material variance in the expert testimony as to the mental condition before and subsequent to that day, there was a marked difference in the non-expert testimony. Not only was there new testimony, which, though controverted, supported the amendment relating to the new ground of undue influence and false representation, quoted in the preceding paragraph, but there was new and specific proof by the caveatrices, lacking at the previous trial, as to the mental condition on the day in question. A son of the decedent testified that in the morning of that day he was at the home of the decedent, his father, and the decedent,

while lying in bed, stated that he (the decedent) was not at home, had not been there in a long time, and had to go there; and that he had seen his father practically every day for almost a month "in the same condition." Another witness testified that he rode in the automobile with the testator on the way to the city where the will was executed on the same day; and that "he [the decedent] *talked at random*" in conversation with another person on the way. Under this testimony, taken with the other proof on the issues of mental capacity and undue influence, it can not be held that the rulings made in the former decision of this court conclude adversely the defendants in error, the caveators, on the issues made by the evidence at the second trial, or that at the second trial a verdict was demanded as a matter of law in favor of the propounder of the will.

3. "Proof that a witness made previous statements contradictory to the statements he made while testifying is admissible, though the witness testifies he does not remember whether or not he made such previous contradictory statements." *Waycaster* v. *State*, 136 *Ga.* 95 (2), 101 (70 S. E. 883); *Sealy* v. *State*, 1 *Ga.* 213 (3) (44 Am. D. 641); *Estill* v. *Citizens & Southern Bank*, 153 *Ga.* 618 (4), 621 (113 S. E. 552). This rule applies to expressions of opinion which are inconsistent with the testimony of the witness, and which tend to detract from his testimony. *Bates* v. *State*, 4 *Ga. App.* 486, 490 (61 S. E. 888), citing 1 Greenleaf on Evidence (16th ed.), § 264 (a). The court therefore did not err in admitting the testimony of the ordinary, who originally tried the case, that the attorney who prepared the will and was one of the subscribing witnesses, had stated to the ordinary that "maybe [the ordinary did] right in setting the will aside, as he [the attorney] had a question in his own mind about it," where the attorney had testified in the present trial: "I would not have prepared the will for him and had it attested by these witnesses if *in my opinion* he had not essential capacity to make a will," and "I would not say there was a *doubt in my mind*;" and where upon calling the attention of the witness to the time, place, and circumstances, he stated that he did not recall such a statement or conversation. The opinion of such a subscribing witness was not irrelevant, since, as was held in the former decision in this case, such witnesses may testify as to their opinion of the mental con-

dition of the decedent, and "are not obliged to give the reasons for their opinions." *Griffin* v. *Barrett,* supra; *Scott* v. *McKee,* 105 *Ga.* 256 (2) 258 (31 S. E. 183); *Dyar* v. *Dyar,* 161 *Ga.* 615, 619 (131 S. E. 535); *Potts* v. *House,* 6 *Ga.* 324 (50 Am. D. 329).

4. "If the general charge substantially covers a request . . the court need not repeat . . the language of the request, though in writing." *Hoffman* v. *Oates,* 77 *Ga.* 701 (2). The remaining special grounds, excepting to the refusal of written requests to charge, are all without merit, since all of the essential principles embodied in the requests were fully and fairly covered in the general charge. These requests are set forth and discussed in the opinion.

JENKINS, Justice. Under the special grounds referred to in division 4 of the syllabus, the second ground relates to a request to charge the jury, on the question of undue influence, that "a man's wife or child may undertake, if they so desire, to persuade him to make a will and to make it in any way that such wife or child might desire it to be made; they may even plead with him to make it a certain way, and still if this persuasion did not amount to undue influence within the meaning of the law given you in charge by the court, and if the person making the will had sufficient mental capacity to make it, it would still be a legal, valid, and binding will, notwithstanding persuasion may have been used in undertaking to procure it." The fifth ground covers a request to give the definition of undue influence, stated in *Bohler* v. *Hicks,* 120 *Ga.* 800 (5) (supra), that "undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion;" and to further charge that the son and widow of the decedent, in whose favor he made the alleged will, or either must have "used such undue influence which amounted to a deception of [the decedent] to force a coercion, and that either one or both of these parties brought such influence to bear upon [the decedent] as that he did not have the will power or capacity to resist;" and that "you must find these facts from the evidence in the case, and you are not authorized to act on mere suspicion that they may have influenced in the making of this will, but it must reasonably appear from the evidence, and if it does not appear, then you are instructed that it is your duty to find against undue influence." The court gave in charge the language of the

Code, § 113-208, defining the fraud, duress, or undue influence that would invalidate a will; and further instructed the jury: "To constitute undue influence within the meaning of the law, there must be mental constraint, moral coercion, the substitution of external for internal agency. It must destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse, because of the alleged undue influence. It is not every kind of influence by one person toward another which is undue, and you are instructed that honest intercession and persuasion, if such, or fair and flattering speeches, if such, or acts of kindness, if such, will not, as a matter of law, amount to such undue influence as would authorize the setting aside of a will on that ground. In order for undue influence of itself to vitiate a will, the influence must go to the extent of substituting the will of the person or persons charged with such conduct in the place of the will of the testator or the proof must show the undue influence to amount to moral coercion, as already stated to you." There was no exception to any of these instructions, and they sufficiently dealt with all of the essential principles requested.

The third and fourth grounds, relating to mental capacity, cover a request to charge that if the decedent "had sufficient mental capacity to understand who his relatives were and comprehend what property he owned and form a rational desire as to how he wanted to dispose of it, then he had sufficient mental capacity to authorize him under the laws of this State to make a will;" and another request in similar language. On this subject the judge charged the definitions and tests of mental capacity stated in the Code, §§ 113-202, 113-204, and 113-205, and further instructed the jury substantially as requested, as follows: "A testator has testamentary capacity who understands the nature of a testament or will, namely, that it is a disposition of property to take effect after death, and who is capable of remembering generally the property subject to his disposition and the persons related to him by ties of blood and of affection, and of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to have a decided and rational desire as to the disposition of his property, under these circumstances, that is sufficient to constitute testamentary capacity."

The sixth ground relates to a request to charge that if the evidence disclosed sufficient mental capacity and no undue influence, within the meaning of the law as charged, the jury were "not concerned with whether the will is just or unjust, reasonable or unreasonable, or wise or unwise," and a similar request. In this connection, the court told the jury that the will should not be set aside if valid under the rules charged, "even though the jury may not have agreed with the testator in the justice of depriving the heir or heirs of his property." Under no view was the propounder of the will entitled to an elaboration of this statement, especially under the principle stated in the Code, § 113-205, that "in cases of doubt as to the extent of [the] weakness" of intellect resulting from old age, "the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question."

There is no merit in the seventh ground, since the requested charge, that the verdict should be based solely on the law given by the court and the evidence in the case, without regard to public opinion or what any juror might privately know unless he was sworn and examined as a witness, was given in almost identical language.

*Judgment affirmed on main bill of exceptions; cross-bill of exceptions dismissed. All the Justices concur.*