*Hawkins & Parnell, Ollie M. Harton, Todd E. Schwartz, King & Spalding, S. Samuel Griffin, Althea Prince-Dublin, Richard A. Schneider,* for appellants.

*John J. Spillane, Brent M. Rosenthal, Brian K. Peacock,* for appellees.

*Case Nos. S06A1219, S06A1221, S06A1222, S06A1223, S06A1225*

Asbestos claims; constitutional question. Cobb State Court. Before Judge Carlisle (case no. S06A1219); Judge Darden (case nos. S06A1221, S06A1225); Judge Collins (case no. S06A1222); Judge Clayton (case no. S06A1223).

*Nelson, Mullins, Riley & Scarborough, Melinda L. Moseley, Swift, Currie, McGhee & Hiers, Kenneth M. Barre, C. W. Tab Billingsley, Jr., King & Spalding, Richard A. Schneider, Eric M. Wachter,* for appellants.

*Norman C. Anderson, W. Lee Gresham III, Kenneth J. Wilson, J. David Butler, John J. Spillane,* for appellees.

*Hall, Bloch, Garland & Meyer, F. Kennedy Hall, Mark E. Toth, Inglesby, Falligant, Horne & Courington, Glen M. Darbyshire, Shook, Hardy & Bacon, Mark A. Behrens, Cary Silverman, Lynda S. Mounts, Robin S. Conrad, Amar D. Sarwal, Sherman Joyce, Donald D. Evans, Jan Amundson, Quentin Riegel,* amici curiae.

## S06A0978. WHITE v. THE STATE.
(637 SE2d 645)

HINES, Justice.

Janice White appeals her convictions for felony murder while in the commission of cruelty to a child in the second degree, aggravated assault, and cruelty to a child in the first degree, in connection with the death of her infant daughter, Daija White. For the reasons that follow, we affirm in part and vacate in part.[1]

---

[1] Daija died on October 16, 2003. In the March term of 2005, an Upson County grand jury indicted both White and Otheron Marcel Walker for malice murder, felony murder while in the commission of aggravated assault, aggravated assault by striking Daija on the head with an object, aggravated assault by striking Daija on the body with an object, and cruelty to a child in the first degree; White was also indicted for felony murder while in the commission of cruelty to a child in the second degree. On July 15, 2005, the trial court transferred venue to Spalding County, where White and Walker were tried together before a jury August 22-24, 2005. White

Construed to support the verdicts, the evidence showed that Daija was ten months old at the time of her death. She lived with White, her father, Otheron Marcel Walker, and a brother, who was then 22 months old. On October 16, 2003, White left for work at 4:10 p.m.; a neighbor heard Daija "whining" inside the apartment. The neighbor and Walker spoke outside the apartment for approximately 20 minutes. No other adult was at the apartment.

At 5:46 p.m., a physician was called to the emergency room of a hospital where Daija had been taken by ambulance; Daija was already dead. She was bruised on her face and head, shoulder, and chest, which appeared to have been squeezed by hands. There was a cut on her abdomen, and marks on her groin and a thigh, showing very recent blows. On the outside of her genitalia, there was bruising and some healing lesions,[2] and there were bruises and lacerations on the back of her thighs, including the mark of a strap; these injuries had occurred two or three days before her death, while some of the injuries to the torso were the final blows before death. Walker told the physician that Daija's brother must have thrown her off the bed or against a wall. Earlier, Walker had told the emergency personnel who came to the apartment that Daija had fallen from the bed. Neither of these accounts was consistent with the observed injuries.

White was notified at her job that Daija had been taken to the hospital; before leaving work, White waited ten minutes for her payroll check to be given to her; she also made some telephone calls. When White arrived at the hospital, she told the physician attending Daija that she had bathed Daija that day, had viewed her entire body, and saw no injuries. The physician testified that had White bathed Daija within the last three days before her death, the injuries would have been apparent. The physician also opined that Daija's last injuries were probably inflicted within two hours of death.

---

was found not guilty of malice murder and felony murder while in the commission of aggravated assault, but was found guilty of felony murder while in the commission of cruelty to a child in the second degree, both counts of aggravated assault, and cruelty to a child in the first degree. Walker was found guilty of all charges he faced and sentenced to life in prison with two 20-year terms to run consecutively to the life term, and to each other. On August 30, 2005, White was sentenced to life in prison for felony murder, a consecutive term of 20 years in prison for aggravated assault by striking Daija on the head with an object, and a term of 20 years in prison for cruelty to a child in the first degree, to be served consecutively to the term for aggravated assault; the court ruled that the crime of aggravated assault by striking Daija on the body with an object merged with the crime of aggravated assault by striking Daija on the head with an object. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). On August 30, 2005, the court also returned venue to Upson County. White moved for a new trial on September 13, 2005, and amended the motion on December 12, 2005. The amended motion was denied on December 21, 2005. White filed her notice of appeal on January 9, 2006, the appeal was docketed in this Court on February 10, 2006, and submitted for decision on the briefs.

[2] There was no evidence of sexual abuse.

The medical examiner testified that the cause of Daija's death was blunt force injuries to the head and body. Fatal abdominal bleeding had occurred due to internal bruising produced by exterior blows. Her final injuries also included two skull fractures, probably from two separate blows. A retinal injury indicated that Daija was violently shaken a month before death. Bruising on her throat indicated that Daija had been grasped firmly under the chin by an adult hand. Daija's buttocks revealed "bruising on top of bruising on top of bruising" that had occurred over the last two or three days before death; the majority of the bruises were very recent. She also had a bruise on her leg caused by an object such as a belt. Bruises covered 40 to 50 percent of Daija's body. It was "not plausible at all" that Daija's injuries were caused by a fall from a bed. The medical examiner opined that Daija suffered her final injuries two to three hours before death; on cross-examination, the medical examiner agreed that there was an "80 or 90 percent chance" that death would have occurred "within an hour or thereabouts" after the final injuries.

Daija died on a Thursday. The previous weekend, from Friday night until Sunday evening, Daija stayed with an aunt. At that time, Daija had a bruise on her thigh, and a small bruise on her cheek, but no other injuries.

White testified on her own behalf. She stated that the physician was confused about what White had told her; that White had related that she bathed Daija on Tuesday, and "tried to" on Thursday, but that Walker stopped her before she did so and said he would do it. She also testified that Walker had done all of the bathing and diapering of Daija between Tuesday and Thursday, intervening whenever she began to do it, and denied that the bruises described in the medical testimony and depicted on photographs were present on Tuesday. Between Tuesday and Thursday, White would pick Daija up, but she was always wearing long sleeves and pants; Daija did not make any cries when White held her on those days, despite the bruising depicted on the photographs. White also testified that: there was no appreciable delay when she got her paycheck, and that getting it before she left was her supervisor's idea; the only telephone calls she made at the time were to arrange transportation; and prior to the fatal day, she saw bruises on Daija that Walker explained were the result of an accident.

1. White contends that the evidence is insufficient to support her convictions, in particular urging that the medical evidence showed an "80 or 90 percent chance" that Daija's final injuries were inflicted "within an hour or thereabouts" before her death, which White marks as 5:46 p.m. She thus contends that as evidence showed that she left the apartment at 4:10 p.m., it is likely that Walker, not she, inflicted these injuries. However, the evidence of the time of Daija's death is

not as precise as White asserts; the only evidence pertaining to such time frame with exactness is that the attending physician was called to the emergency room at 5:46 p.m. and that Daija was dead on arrival. The evidence did not disclose what time emergency responders arrived at White's apartment, but did disclose that Daija was not breathing at that time. The evidence was such that the jury could conclude that the time frame in which Daija's final injuries were inflicted included the time before White left for work. Further, there was evidence concerning White's actions after being called to the hospital, as well as evidence of her actions in the days preceding Daija's death that indicated her guilt; the jury was not required to accept White's version of events. See *Brannon v. State*, 266 Ga. 667, 668 (469 SE2d 676) (1996).

The evidence was sufficient to enable a rational trier of fact to find White guilty beyond a reasonable doubt of the crimes of which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. White asserts that the crime of cruelty to a child in the first degree should have merged for sentencing purposes with her felony murder conviction based on the underlying felony of cruelty to a child. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). The State agrees that the crimes merged in fact, and examining the evidence in the context of the trial court's instructions to the jury, we agree. Accordingly, the judgment of conviction and sentence entered thereon for cruelty to a child in the first degree must be vacated. See *Fitzpatrick v. State*, 268 Ga. 423, 424 (1) (489 SE2d 840) (1997).

3. The trial court denied White's motion to sever her trial from that of Walker. See OCGA § 17-8-4. She contends this was error, as her defense was antagonistic to Walker's. "The mere fact that codefendants' defenses are antagonistic is not sufficient in itself to warrant the grant of a separate trial absent a showing of harm. [Cit.]" *Holmes v. State*, 272 Ga. 517, 518 (2) (529 SE2d 879) (2000). White makes no such showing. Walker's only witness had previously testified for the State, and that evidence, as well as evidence flowing from Walker's cross-examinations of witnesses that arguably could be construed as implicating White, was merely cumulative of the State's evidence against her. See *Loren v. State*, 268 Ga. 792 (2) (493 SE2d 175) (1997).

White nonetheless asserts that she was harmed by her inability to call Walker to testify, that evidence against Walker might have "spilled over" to her and been considered against her, and that she was forced, by virtue of the chance of a coin toss, to give her closing argument before Walker. But, White makes no showing that Walker would have been more likely to testify if their trials had been severed. See *Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996). At the

hearing on the motion to sever, although the State noted that its theory of the case was that White and Walker acted jointly in the fatal abuse of Daija, White asserted that if severance was granted, she could ask Walker if he wrote a certain letter to White after Daija's death and whether he could corroborate White's testimony that she had no intimate contact with Daija during the days before her death, without Walker invoking his rights under the Fifth Amendment to the Constitution of the United States.[3] Assuming arguendo that such questioning could be conducted, White does not show that the absence of such testimony harmed her; it was uncontroverted at trial that Walker wrote the letter at issue, and there is no showing that Walker's testimony would tend to exculpate White. Id.

As to the spillover effect of evidence, the mere fact that the evidence against Walker might have been stronger than the evidence against White does not mandate severance. See *Strozier v. State*, 277 Ga. 78, 81 (5) (b) (586 SE2d 309) (2003). Nor is there any harm shown by the order of closing arguments. Of necessity, in a joint trial, even when there are antagonistic defenses, one defendant must argue first. The trial court did not abuse its discretion in denying White's motion to sever. *Holmes*, supra.

4. After the trial court's instructions to the jury, White noted that the court frequently used plural terms such as "they" to refer to White and Walker, and asked for an instruction reiterating that verdicts were to be rendered separately as to each defendant. The trial court did not err in denying the request. Jury instructions are read and considered as a whole in determining whether there is error. *Hambrick v. State*, 256 Ga. 688, 690 (3) (353 SE2d 177) (1987). The jury was amply instructed on its duty to render separate verdicts as to each defendant, and obviously did so, finding Walker guilty of malice murder and felony murder while in the commission of aggravated assault, but acquitting White of these charges.

5. In separate enumerations of error, White asserts that the trial court erred in not sending into the jury room during deliberations a letter Walker wrote to White, and in allowing White to be questioned about getting an abortion. However, White did not raise any objection in the trial court at the time of either of these incidents. "A defendant must object to the alleged impropriety at the time it occurs in order to afford the trial court the opportunity to take remedial action. [Cit.]" *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996). White's failure

---

[3] White also claimed that she would be able to ask Walker some questions concerning a statement he made to police, but no evidence concerning that statement was introduced at trial and the statement does not appear in the record.

to do so waives appellate review of any alleged impropriety. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

6. Finally, White contends that she did not receive effective representation by trial counsel because her counsel failed to take certain actions. In order to prevail on a claim of ineffective assistance of counsel, White must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to her defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, she must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong, White must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of her trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003). When trial counsel does not testify at the hearing on the motion for new trial, it is extremely difficult to overcome the strong presumption that counsel's performance was reasonable. *Rivers v. State*, 271 Ga. 115, 118 (2) (516 SE2d 525) (1999).

Trial counsel did not testify at the hearing on the motion for new trial. However, appellate counsel relied on an affidavit that trial counsel had prepared and filed with the clerk of court, in which trial counsel stated that he should have made certain objections that he did not make. This Court has concluded that "trial courts on motion for new trial are authorized to consider as substantive evidence the information presented by competent affiants in properly-executed affidavits when the affidavit is made on personal knowledge and sets forth facts that would be admissible in evidence." *Dickens v. State*, 280 Ga. 320, 322, n. 2 (627 SE2d 587) (2006). The State nonetheless contends that the affidavit was never introduced as an exhibit at the hearing and was not properly placed before the trial court. Pretermitting any question of whether the affidavit was properly before the court, the affidavit contends, in part, that certain events occurred that are not reflected in the record. To the extent that White's claim of ineffective assistance of counsel pertains to those alleged events, the affidavit does not serve to supplement the record, see OCGA § 5-6-41 (f), and its factual contentions do not present any issue for

review. See *Forehand v. State*, 267 Ga. 254, 255 (2) (477 SE2d 560) (1996); *Henderson v. Lewis*, 128 Ga. App. 28 (1) (195 SE2d 289) (1973).

Regarding other assertions of ineffectiveness of trial counsel, White urges counsel was ineffective in failing to object when the emergency room physician testified that she requested that both White and Walker submit to a "drug screen," and that they did so, and in failing to object when the physician was asked if "they both passed," and she responded, "No, sir." Similarly, White urges that trial counsel was ineffective in failing to object when she was questioned concerning a fetus that she had aborted when she was pregnant with another child by Walker. However, the affidavit of trial counsel does not address either episode, and White submitted no evidence concerning whether counsel's performance was deficient in his failing to object, or whether the outcome of the trial would have been different if he had done so. The trial court did not err in determining that White had not met her burden as to these asserted grounds. See *Wigfall v. State*, 274 Ga. 672, 674-675 (2) (558 SE2d 389) (2002).

White also contends that trial counsel was ineffective for failing to object when the court ruled that a portion of the letter from Walker to White could be read into evidence, but that the letter would not go out with the jury during deliberations, and asserts that counsel should have asked for an "exculpatory charge" as regards the letter.[4] However, even assuming that an objection would have resulted in the letter going out with the jury during its deliberations, White has failed to show that the result of her trial would have been different. During direct testimony, in response to a request to read a portion of the letter to the jury, White testified:

> It says this thing has almost — this thing has made me almost mate [sic] and broken my heart like never before. I've never lost — I've never lost of my five before her. I never — I never hurt any of them before her. I always been there for them. . . . And he says I pray for your family for their hatred towards me.

The remainder of the letter is disjointed and rambling, and White points to no other part of it that would be exculpatory of her. That

---

[4] The trial court also ruled that the autopsy report would not go out with the jury. On these points, trial counsel's affidavit states the conclusion that "Counsel for Defendant White, in retrospect, should have objected to this ruling, especially as to the letter, but failed to do so," and "should have ask[ed] for or the trial court judge should have given an explanatory charge to the jury to the effect that while the letter and autopsy report would not go out with the jury that they were to consider them with equal weight to all other evidence."

portion of the letter which inculpates Walker was presented to the jury, and White does not carry her burden of showing that if the letter had been available to the jury during deliberations, the result of her trial would have been different. Nor has White suggested any "exculpatory charge" that trial counsel should have requested that would have been granted.[5]

The trial court did not err in denying the motion for new trial on the ground of ineffective assistance of counsel. *Smith*, supra.

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED NOVEMBER 20, 2006.

*Ed Downs & Associates, Edward R. Downs, Tiffany R. Lunn*, for appellant.

*Scott L. Ballard, District Attorney, Rudjard M. Hayes, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.

---

[5] To the extent that White relies upon the text of trial counsel's affidavit that an instruction should have been given "to the effect that while the letter and autopsy report would not go out with the jury that they were to consider them with equal weight to all other evidence," the jury was properly instructed that the comparative weight of the evidence was for its determination.