S10A0383. HIGHTOWER v. THE STATE.
S10A0589. JOHNSON v. THE STATE.
(698 SE2d 312)

HINES, Justice.

These appeals arise from a joint trial stemming from the fatal shooting of Travis Harris and the pistol beating of Marvin Thurman. In Case No. S10A0383, Ricardel Hightower appeals his convictions for malice murder, armed robbery, and aggravated assault; in Case No. S10A0589, Roderick Johnson appeals his convictions for the same offenses. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that the apartment of Sammy Green in Albany, Georgia was used as a gambling house. On December 7, 2002, Zackery and Hightower were at the apartment at various times during the day, and that evening Hightower got into an argument with Travis Harris over some behavior while playing cards. Zackery broke up the argument. Hightower was gambling with Zackery's money, and he and Zackery became upset after losing a significant amount of it. Hightower and Zackery left the apartment around midnight and went to a nearby pool hall. There they met Roderick Johnson and Abe Brown, and the men agreed to go to Green's apartment and rob those inside. In the early morning hours, Zackery, Hightower, and Johnson went to Green's apartment; they were masked and armed with an AK-47

---

[1] The crimes occurred in the early hours of December 8, 2002. On April 12, 2006, a Dougherty County grand jury returned an indictment charging Richard Zackery, Ricardel Hightower, Roderick Johnson, and Abe Brown with: Count 1 – burglary; Count 2 – armed robbery; Count 3 – the aggravated assault of Marvin Thurman; Count 4 – the aggravated assault of Travis Harris; Count 5 – the malice murder of Travis Harris; and Count 6 – the felony murder of Travis Harris. Zackery, Hightower, and Johnson were tried jointly before a jury May 8-15, 2006, and all were found guilty of Counts 2, 3, 4, 5, and 6; prior to trial, an order of nolle prosequi was entered on Count 1. Each of the three men was sentenced as a recidivist to life in prison without parole on Count 5; life in prison on Count 2, to be served concurrently with the sentence on Count 5; and 20 years in prison on Count 3, to be served concurrently with the sentence on Count 5. As to each man, the trial court found that Count 4 merged with Count 5 for the purpose of sentencing; Count 6 stood vacated by operation of law. Hightower filed a motion for new trial on June 13, 2006, and amended it on December 31, 2007; the motion was denied on October 8, 2008. On December 11, 2008, Hightower moved for an out-of-time appeal; the motion was granted on January 9, 2009, and Hightower filed his notice of appeal on January 26, 2009. His appeal was docketed in the January 2010 term of this Court, and submitted for decision on the briefs. Johnson's motion for new trial was denied on October 8, 2008, and he filed his notice of appeal on October 30, 2008. His appeal was docketed in the January 2010 term of this Court, and submitted for decision on the briefs. Zackery's appeal has previously been addressed by this Court. *Zackery v. State*, 286 Ga. 399 (688 SE2d 354) (2010).

assault rifle purchased by Zackery. Harris, Sammy Green, Anthony Green, Thurman, and Jerry Turner were at the apartment at that time. Thurman and Harris were standing outside the front door when the three armed masked men approached. Harris ran and Zackery fired the AK-47 at him, fatally wounding him. Thurman was struck with a pistol and forced inside the apartment, where he, Anthony Green, and Turner were robbed; Sammy Green hid in the bathroom during the robbery. See *Zackery v. State*, 286 Ga. 399 (688 SE2d 354) (2010).

## Case No. S10A0383

1. Hightower asserts that the evidence was insufficient to support his convictions, contending that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except that of his guilt. See OCGA § 24-4-6.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998). Although Hightower contends that he was tied to the crimes only by the clothing he wore, and that his knowledge of Harris and the crime scene would have led him to behave differently than the masked robbers did, there was evidence that Hightower had argued with Harris during a card game, and that Harris had snatched money from the table. Hightower also asked Shawn Keith to engage in a robbery with him; Keith later saw Hightower burning clothes. The evidence was sufficient to enable a rational trier of fact to find Hightower guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Banta v. State*, 282 Ga. 392, 395-396 (1) (651 SE2d 21) (2007).

2. During his opening statement, the prosecutor said, "Roderick Johnson made the statement to the police or a police officer that he felt that Richard Zackery and Ricardel Hightower were involved in the crime, and at that time, he believed that Abe Brown had told everything." Hightower moved for a mistrial, which was denied, and he contends that the State's reference to Johnson's statement violated *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d

476) (1968). This Court has previously determined that this incident produced no reversible error. *Zackery*, supra at 401-402 (3).

3. Holman, a relative of both Hightower and Johnson, testified during the State's case-in-chief, that he was in a pool hall with Johnson on December 7, 2002, left with Johnson at 11:30 p.m., went to another establishment, and Johnson left there with Brown sometime before 12:59 a.m. on December 8, 2002.

The State asked Holman if he knew anything about "this event that's the subject of this trial." He responded: "Heard about it by the street committee. I heard it." After the State clarified that by "the street committee" Holman meant that he had heard things from public discussion and television, the State asked if there was "any occasion that you went and talked to your cousin, Daphne Hightower." Holman responded "I had my nights mixed up," and that he had not gone to his cousin's house on Sunday night December 8, 2002, but had gone there the previous Friday night, December 6, 2002, before the commission of the crimes. After again questioning whether Holman had gone to his cousin's home Sunday night, the prosecutor asked: "Was there an occasion that you came over to your cousin, Daphne Hightower's house and you represented to her that Ricardel was in trouble? Ricardel was in trouble and done killed someone?" Holman responded negatively. Holman was later asked whether "there was an occasion when you talked to [the investigating law enforcement officer] about her investigation into Ricardel Hightower and Roderick Johnson and you represented to her that she was on the right track?" Holman responded: "No, sir." No objections were made during any of this testimony.

The State later asked an investigating officer about what Holman had said on the earlier occasion that Holman had been asked about; the officer testified that Holman "stated that he believed that Hightower and Zackery . . . ." An objection was made at that time, joined by all defendants, that the question improperly called for an opinion. After discussion and the court's overruling of the objection, the officer testified: "He stated that he strongly believes that Mr. Hightower and Mr. Zackery committed the robbery and the burglary." The court immediately instructed the jury that it had permitted this testimony only for impeachment purposes, and that Holman's opinion was not a substantive matter.

Holman was later recalled to the witness stand, and asked if, in a conversation with an investigator, he "represented that you believed that Richard Zackery and Ricardel Hightower were involved in this crime because of the money involved in this particular case, that they were losing gambling?" Hightower objected that this question called for an opinion as to the ultimate fact to be found by the jury. After some questions regarding Hightower's and Zackery's

gambling, the State asked if "there was an occasion in this conversation when you represented [to the investigator] that you believed that Richard Zackery and Ricardel Hightower committed this crime because Ricardel was losing money?" Hightower, joined by Zackery, objected, saying "same objection." The objection was overruled, and Holman responded that he had told the investigator about money passing between Hightower and Zackery. The State repeated its question as to whether Holman had told the investigator that he believed Hightower and Zackery had committed the crimes; Holman responded affirmatively, and explained that he had done so after the investigator had told him "everything that was going on and everybody there had done told her anything about this case and she asked me how I feel, do I feel that they had anything to do with this." Hightower, joined by his co-defendants, moved for a mistrial outside the jury's presence, which was denied. When the jury returned, the court said: "I want to instruct you that the opinion Mr. Holman gave is a decision that y'all have to make, not him. He's just stated what he thinks based on facts he knew. You ultimately decide who is guilty and who is not guilty in this case, if anybody is guilty." Hightower renewed his motion for mistrial, which was denied.

Citing OCGA § 24-9-65[2] Hightower enumerates as error the two instances in which the trial court allowed evidence of Holman's expression of opinion, first through the investigating officer's testimony, and then through Holman's direct testimony; he contends that the expressions of opinion were as to the ultimate issue of Hightower's guilt or innocence, that this invaded the province of the jury, *Almond v. State*, 274 Ga. 348 (2) (553 SE2d 803) (2001), and that Holman's expressed opinion was not on a matter beyond the ken of the jury. See *Medlock v. State*, 263 Ga. 246, 248-249 (3) (430 SE2d 754) (1993). However, in the limited circumstance of impeachment, a witness's prior inconsistent statement regarding an expression of opinion that would otherwise be inadmissible can be admitted when, as here, the trial court promptly gave a limiting instruction that it was admitted solely for the purpose of impeachment. *Shropshire v. State*, 226 Ga. App. 669 (487 SE2d 384) (1997). Testimony reporting the fact that Holman had expressed his opinion regarding the guilt of certain defendants was admitted not for the substance of that opinion, or even to rebut earlier testimony regarding this opinion, but to impeach his testimony that he had not "represented" certain

---

[2] OCGA § 24-9-65 reads:
> Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. If the issue shall be as to the existence of a fact, the opinions of witnesses shall be generally inadmissible.

matters regarding the crimes and their investigation.[3] See *Griffin v. Barrett*, 185 Ga. 443, 445 (3) (195 SE 746) (1938) (Impeachment may include prior "expressions of opinion which are inconsistent with the testimony of the witness, and which tend to detract from his testimony.").[4]

4. The trial court instructed the jury:

> If after considering the testimony and evidence presented to you, together with the charge of the court, you find and believe beyond a reasonable doubt that any or all of the defendants committed the offense with which they're charged, then in that event, you would be authorized to find the defendants guilty.

Hightower urges that this instruction relieved the State of the burden to prove separately each defendant's guilt beyond a reasonable doubt. However, viewing the jury instructions as a whole, *Napier v. State*, 276 Ga. 769, 772 (2) (583 SE2d 825) (2003), there is no reversible error. The court also instructed the jury that "though you may consider all of the evidence as a whole, conviction of one defendant does not necessarily require you to convict all. You, the jury, must determine the guilt or innocence of each defendant separately." And,

> [i]f you do not believe that any of the defendants or all of them have been sufficiently identified as the persons who committed the alleged crime or were a party to it, or if you have any reasonable doubt about such, then it would be your duty to acquit the defendant, or those defendants that you decide are not guilty. . . .

5. Hightower claims that his trial counsel failed to provide effective representation in regard to the potential introduction into evidence of the clothes he was wearing on the night of the crimes;

---

[3] That Hightower could have made objections he did not make, or could have sought a ruling designed to tailor the impeachment in a way that would not produce testimony regarding Holman's opinion as to the ultimate issue is of no moment; this Court must address the objections and rulings actually made at trial.

[4] Hightower also asserts that the trial court's second instruction to the jury that Holman's opinion "just stated what he thinks based on facts he knew" improperly bolstered Holman's testimony because Holman's opinion was not based upon "facts he knew," but upon hearsay. At trial, after the curative instruction, Hightower renewed his motion for mistrial, which preserved his claim of error on appeal as to the basis of his motion for mistrial. See *Ford v. State*, 269 Ga. 139, 141 (3) (498 SE2d 58) (1998). However, at trial, he raised no objection regarding a claim of "bolstering," and the issue is not preserved for appeal. *Patterson v. State*, 280 Ga. 132, 134 (2) (625 SE2d 395) (2006).

there was testimony during trial supporting the inference that Hightower had burned his clothes after the crimes. In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

After the prosecution rested its case, Hightower's attorney called Hightower's wife to testify. Outside the presence of the jury, the State objected that it had just been handed certain items of clothing, when no prior notice of such had been given, despite the reciprocal discovery rules. Defense counsel stated that it was the first time he had been given the items. While the court discussed its potential ruling, defense counsel announced that he would not ask the witness any questions regarding the articles of clothing; the jury was brought into the courtroom, and the testimony of the witness proceeded without mention of the clothing.

Hightower urges that this was defective performance in that counsel knew he was obligated to provide the State with notice of any physical evidence he wished to introduce. And, during the motion for new trial, Hightower testified that, a week before the trial, he told counsel that his wife still had the clothes he wore that day, and could bring them to trial, to refute Keith's testimony that he saw Hightower burning clothes after the commission of the crimes. Although counsel testified that he had no recollection of the details of the attempt to present the clothes to the jury, other than that they were not given to him until the day Hightower's wife testified, we need not determine whether his failure to attempt the presentation constitutes deficient performance on his part; Hightower fails to show that, had counsel given the State the necessary notice of the intent to introduce such evidence, there is a reasonable probability that the outcome of the trial would have been different. Hightower's wife did

not testify at the motion for new trial, and there was no evidence as to how she would authenticate the clothes as those that Hightower wore on the night of the crimes, or what evidence she would have given about their whereabouts in the three-and-a-half years between the time of the crimes and the trial.[5] See *Phillips v. State*, 280 Ga. 728, 731 (2) (632 SE2d 131) (2006).

6. In his final enumeration of error, Hightower contends that during its opening statement, the State referred to matters about which it produced no evidence. However, "[a]lthough the prosecution's opening statement may have painted with a broad brush, it was not misleading," as evidence was introduced to support the outline of the case presented in the opening statement. *Holton v. State*, 280 Ga. 843, 847-848 (5) (632 SE2d 90) (2006). Further,

> [a]s to any claim that by the subject statements the prosecutor made assertions of fact in the opening statement that could not be established by the evidence, it fails to provide a basis for reversal of [Hightower's] convictions as there was no evidence that the prosecutor acted in bad faith and the trial court instructed the jury that evidence did not include the opening statements by the attorneys. [Cits.]

*Zackery*, supra at 401 (2). Nor does Hightower show error as to his remaining complaints regarding the State's questioning of witnesses or remarks in closing argument; he did not object during closing argument, and to the extent that he objected during the State's questioning of witnesses, the evidence complained of demonstrated Hightower's anger at losing money gambling, and his motive for committing a robbery.

### Case No. S10A0589

7. The evidence was sufficient to enable a rational trier of fact to find Johnson guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

8. During his opening statement, the prosecutor asserted that the "defendants were all identified as potential suspects in this case based upon information from a confidential informant." Hightower objected that any information from a confidential informant was

---

[5] Similarly, at the hearing on the motion for new trial, Hightower testified that the clothes could have been tested to show their relevance, but he did not identify what that testing may have been. At the hearing, he did not produce the results of any such test, or the clothes at issue.

hearsay and objectionable. The trial court overruled the objection and, outside the presence of the jury, Hightower moved for a mistrial, asserting that the State's use of inadmissible hearsay evidence in its opening statement was improper; Johnson and Zackery joined in the motion, which was denied.

Johnson now asserts that the State's comment in its opening statement violated his Sixth Amendment right of confrontation. However, Johnson "did not object at trial on confrontation grounds; he objected simply on the basis that the testimony was hearsay. Consequently, he cannot now for the first time raise an issue regarding a violation of his right of confrontation. [Cit.]" *Walton v. State*, 278 Ga. 432, 436 (2) (603 SE2d 263) (2004). To the extent that Johnson contends that the failure to object on confrontation grounds constituted ineffective assistance of trial counsel, Johnson is represented on appeal by the same counsel who represented him at trial, and he cannot now raise a claim of ineffective assistance of trial counsel. See *Perkinson v. State*, 279 Ga. 232, 238 (10) (610 SE2d 533) (2005); *Berry v. State*, 262 Ga. 614, 615 (3) (422 SE2d 861) (1992).[6]

9. Johnson contends that, during its opening statement, the State improperly put his character in issue. However, Johnson raised no objection, and appellate review of the issue is waived. *Harris v. State*, 279 Ga. 522, 525 (4) (615 SE2d 532) (2005).

He also complains that his character was improperly placed in issue during Hightower's cross-examination of an investigating law enforcement officer. Hightower asked "[h]ow many people did y'all put in jail, whether you had a warrant for them or not, in connection with this case?" The officer responded that "I think, if I'm not mistaken, Mr. Johnson had a warrant or something, I'm not sure about that, but I know I didn't personally put anybody in jail." Hightower specified that he was asking about "people other than these three defendants"; the officer repeated, "I didn't personally put anybody in jail." Hightower asked if "during your time as the lead detective in this case, was anybody put in jail in connection with the case?" The detective replied: "I think Mr. Johnson was — I think Sergeant Hall may have put — or his probation officer put a hold on him or something to that effect. That's the only one I can recall." At this point, Johnson moved for a mistrial, and the jury was removed from the courtroom. During discussion of the motion, the State noted that no testimony regarding a probation revocation was presented, and asserted that Hightower's questioning had not in-

---

[6] Assuming that Johnson has preserved a challenge to the State's reference in its opening statement to a comment that Johnson had made to investigating officers, this Court has determined that there was no reversible error under *Bruton*, supra, 391 U. S. 123. *Zackery*, supra at 401-402 (3).

tended to elicit the response given. The court denied the motion, the jury returned to the courtroom, and the cross-examination of the detective witness continued. Johnson did not move for any curative instruction. Under these circumstances, it was not error to deny the motion for mistrial. *Carr v. State*, 282 Ga. 698, 701-702 (3) (653 SE2d 472) (2007).

10. Johnson contends that he was improperly sentenced as a recidivist and claims that, while under a prior indictment, he received notice under OCGA § 17-10-18[7] of the State's intent to seek recidivist punishment, but that under the indictment on which he was tried and convicted, he did not receive any such notice. However, it does not appear that he ever presented this issue to the trial court, and there is nothing to review on appeal.[8] *White v. State*, 281 Ga. 276, 280-281 (5) (637 SE2d 645) (2006).

11. Finally, Johnson has advanced several enumerations of error for which he fails to provide argument or citation of authority. Georgia Supreme Court Rule 22 (2007). Thus, these issues are abandoned. *McNeal v. State*, 281 Ga. 427, 429 (3) (637 SE2d 375) (2006).[9]

*Judgments affirmed. All the Justices concur, except Carley, P. J., and Melton and Nahmias, JJ., who concur specially.*

MELTON, Justice, concurring specially.

I cannot concur in the reasoning employed in Division 3 of the majority opinion. Therefore, although I concur in the remaining Divisions of the majority, I must write separately to address the State's improper impeachment of Johnny Holman with impermissible opinion testimony.

In analyzing Holman's testimony, we must be guided by the general principle that a witness should not be allowed to give his opinion on the ultimate issue of fact to be determined by the jury. In this case, that ultimate issue is the identity of the perpetrators. With this in mind, the record shows that Holman, a relative of Hightower

---

[7] OCGA § 17-10-18 reads:
> At any time after the filing of an indictment or accusation but not later than the arraignment, the state shall notify the defendant of its intention to seek the enhanced penalty or penalties authorized by Code Section 17-10-17. The notice shall be in writing and shall allege the specific factor or factors authorizing an enhanced sentence in the case pursuant to Code Section 17-10-17.

[8] During sentencing, the prosecutor stated: "Your honor, we have already tendered to the defense, starting with defendant, Roderick Johnson, notice of recidivism."

[9] These issues are: admission of evidence without proper foundation, admission of hearsay evidence, admission of speculative evidence, admission of improper opinion evidence, admission of evidence that improperly invaded the province of the jury, and the State's improperly refreshing the recollection of a witness.

and Johnson, was called by the State. After initially questioning Holman about his knowledge of where the defendants may have been on the night of the crime, the State asked two questions intended to elicit prior statements Holman made about the crimes. Holman was first asked: "Was there an occasion that you came over to your cousin, Daphne Hightower's house and you represented to her that Ricardel was in trouble. Ricardel was in trouble and done killed someone?" Later, Holman was asked whether "there was an occasion when you talked to [the investigating law enforcement officer] about her investigation into Ricardel Hightower and Roderick Johnson and you represented to her that she was on the right track?" Holman responded negatively to both questions, and the defendants did not object.

Contrary to the characterization of the trial court and the State, neither of the questions posed to Holman asked for or elicited his opinion about the crimes. Instead, he was asked about statements indicating that he knew the identity of the assailants, not merely that he had an opinion of who they were based on speculation, hunch, or conjecture. Accordingly, the questions did not elicit opinion testimony, and the defendants, therefore, rightly chose not to object to the line of questioning on this particular basis.

Then, after Holman finished testifying, the State called the investigating officer to whom Holman had spoken and, over objection, the trial court allowed the State to elicit her testimony that Holman "stated that he strongly *believes* that Mr. Hightower and Mr. Zackery committed the robbery and the burglary." (Emphasis supplied.) At this point, the State was allowed to introduce Holman's unmitigated opinion testimony for the *first* time.[10] In addition, the opinion testimony was introduced for an improper reason — namely to impeach prior testimony which had been inaccurately classified as opinion testimony. In other words, it was introduced to impeach prior opinion testimony which did not exist. This was clearly error, and the trial court's instruction to the jury to treat the opinion testimony as impeachment evidence merely perpetuated the problem.

Furthermore, the problem remains even though prosecutors generally must be given wide leeway in their scope of impeachment to prevent defendants from "presenting tailored defenses insulated from effective challenge." *Overcash v. State*, 239 Ga. 499, 500 (1) (238 SE2d 50) (1977). Here, the prosecution could have specifically

---

[10] Therefore, true opinion testimony, under the guise of impeachment evidence, was admitted for the first time over objection. This fact, in turn, renders the defendants' failure to object to the initial two questions of the State irrelevant to the latter introduction of Holman's opinions.

elicited information to show that the statements, assuming arguendo that they were admissible, had been made. Instead, the State went far beyond the scope of impeachment and sought to elicit improper opinion testimony on the ultimate issue of fact. In other words, the State tried to submit improper testimony by forcing it under the aegis of impeachment. In *State v. Rocco*, 259 Ga. 463 (384 SE2d 183) (1989), we clearly took issue with this type of strategy. There, we stated: "A party may not question a witness concerning inadmissible matter and then elicit testimony thereafter to be impeached with evidence inadmissible in the case-in-chief." Id. at 467 (1). That is essentially what happened in this case.

These already existing errors were further exacerbated when the State later recalled Holman to the stand, and after Holman talked about the gambling on the night in question, the State was allowed to ask the following questions over objection: (1) "Was there an occasion in this conversation [with the investigating officer] when you represented that you believed that Richard Zackery and Ricardel Hightower committed this crime because Ricardel was losing money [while gambling]?" and (2) "[W]as there an occasion that you represented to [the police investigator] that you believe that these individuals did this crime based upon the fact that Ricardel Hightower was losing Richard Zackery's money?" In response to the second question, Holman answered: "[The investigator] said: 'Just give me your feeling. What do you feel? Do you feel they had anything to do with it by what I done told you?' I told her yes; that's exactly what I told her." After this answer to the second question, the defendants moved for a mistrial. The trial court denied the mistrial, and instead charged the jury that Holman's answers were merely opinions.[11]

Unlike the prior statements of opinion, this testimony was admitted without even the improper excuse that it was impeachment evidence. Although the trial court's instruction appears to recognize that Holman's opinion was improper evidence, the trial court admitted it anyway and never instructed the jurors to disregard it. Again, this is clearly error and runs afoul of the rule that "[a] witness generally is not permitted to express his or her opinion regarding an ultimate issue in the case because to do so would invade the fact-finding province of the jury. . . ." *Medlock v. State*, 263 Ga. 246, 248 (3) (430 SE2d 754) (1993).

---

[11] The trial court charged the jury:
I want to instruct you that the opinion Mr. Holman gave about who may be responsible for the murder in the case is a decision that y'all have to make, not him. He's just stated what he thinks based on facts he knew. You ultimately decide who is guilty and who is not guilty in the case, if anybody is guilty.

The next question, of course, is whether the trial court's errors caused harm. The record shows that, on other prior occasions, the State was allowed to obtain similar opinions and evidence from other witnesses without objection. Accordingly, Holman's testimony was largely duplicative of other admitted testimony, rendering harmless the trial court's error regarding the opinion testimony discussed above. *Hayes v. State*, 265 Ga. 1, 3 (3) (453 SE2d 11) (1995); *Roper v. State*, 263 Ga. 201, 202-203 (2) & n. 2 (429 SE2d 668) (1993).

I am authorized to state that Presiding Justice Carley and Justice Nahmias join in this special concurrence.

DECIDED JULY 14, 2010.

*Jimmonique R. S. Rodgers*, for appellant (case no. S10A0383).
*Mark T. Phillips*, for appellant (case no. S10A0589).
*Gregory W. Edwards, District Attorney, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.